UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

THE LANDINGS YACHT, GOLF
AND TENNIS CLUB, INC.,

     Plaintiff,

vs.                         Case No. 2:22-CV-459-SPC-NPM

SWISS RE CORPORATE SOLUTIONS
AMERICA INSURANCE CORPORATION
and PELEUS INSURANCE COMPANY,

     Defendants.

_____/

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, THE LANDINGS YACHT, GOLF AND TENNIS CLUB, INC., ("Plaintiff" and/or the "Club"), by and through the undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, who files this Complaint against the Defendants, SWISS RE CORPORATE SOLUTIONS AMERICA INSURANCE CORPORATION ("Swiss Re") and PELEUS INSURANCE COMPANY ("Peleus") (collectively, the "Carriers"), and alleges the following:

### Jurisdiction and Venue

1. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000), exclusive of attorneys' fees, interest, and costs.

1

2. Plaintiff is a Florida not-for-profit corporation operating in Lee County, Florida.

3. Defendant Carriers are foreign profit corporations, authorized to transact business in the State of Florida.

4. The federal district court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

5. Venue is proper in Lee County, Florida, before the Middle District of Florida, Fort Myers Division, where this action accrued and where the parties conduct business.

## General Allegations

6. The Club is a Florida not-for-profit corporation responsible for the operation of a residential neighborhood and recreational facilities located in Fort Myers, Lee County, Florida.

7. The residential neighborhood is known as The Landings Yacht, Golf and Tennis Club.

8. Members of the Club are the record owners of residential real property in The Landings Yacht, Golf and Tennis Club and Riverside, an adjacent residential neighborhood.

9. Members make periodic payments to the Club in order to pay for operation of the facilities at The Landings Yacht, Golf and Tennis Club.

10. From time to time, revenue received by the Club from member payments and operating activities was presented to Defendant, Bank of America, for deposit and safekeeping.

11. The Club's funds were held in an account at Bank of America identified by an account number ending in *▮▮▮ ("Account").

12. Bank of America, as steward of the funds in the Account deposited by the Club, was provided written instructions by the Club about who was authorized to transact business on behalf of the Account.

13. The Club was the only account owner, account holder, and entity authorized to transact business on behalf of the Account.

14. Beginning in May of 2021, unauthorized users began requesting payment of funds from Bank of America out of the Club's Account.

15. The requests were made utilizing an electronic, automated clearing house (ACH) system operated by a clearing house, also known as an "ACH operator."

16. These unauthorized users identified themselves to be the Club, by presenting the Club's identifying routing and account numbers to the electronic, automated system run by the ACH operator.

17. In this manner, the unauthorized users purported to be the account holder (i.e., the Club) when, in fact, they were not and had no contractual relationship to the Club at all.

18. Bank of America permitted four unauthorized users to withdraw funds from the Account from May 2021 to September 2021.

19. The total amount of these withdraws permitted by Bank of America from the Club's Account were $6,885.79.

20. From July 2021 to September 2021, additional unauthorized users, through Paychex, Inc., an unauthorized "ACH originator," made unauthorized requests for payment of funds from Bank of America out of the Club's Account.

21. Again, the requests were made utilizing an electronic, automated clearing house (ACH) system operated by a clearing house, also known as an "ACH operator."

22. These unauthorized users, through Paychex, Inc., identified themselves to be the Club, by presenting the Club's identifying routing and account numbers to the electronic, automated system run by the ACH operator.

23. In this manner, the unauthorized users purported to be the account holder (i.e., the Club) when, in fact, they were not and had no contractual relationship to the Club at all.

24. In this manner, Paychex, Inc. impersonated a vendor of the Club, when, in fact, it was not and had no contractual relationship to the Club at all.

25. The total amount of these unauthorized payments permitted by Bank of America to Paychex from the Club's Account was $575,723.95.

26. At all times relevant hereto, in consideration for premiums paid by Plaintiff, there was in full force and effect a policy of insurance issued by the Defendant Carriers bearing policy number C-4MOA-226772-CYBER-2020 with effective dates of October 1, 2020 through December 1, 2021 ("Policy").

4

27. A true and correct copy of the Policy is attached hereto as Exhibit A and is incorporated herein.

28. Under the terms of the Policy, the Defendants agreed to insure Plaintiff against losses caused by funds transfer fraud.

29. Plaintiff promptly reported the above-described loss to the Defendants.

30. The Defendants assigned the matter Claim No. C-4M0A-226772-2856.

31. Despite demand for payment accompanied by supporting evidence, the Defendants have refused to pay the Plaintiff as required by the Policy.

32. Under the terms of the Policy, the Defendants are liable to the Plaintiff for the total amount of the loss, within the Policy limits, less any applicable deductible.

33. Defendants have breached the Policy by refusing to pay the covered damages pursuant to the Policy.

34. All conditions precedent have been met by Plaintiff.

35. The Plaintiff has been obligated to retain the undersigned attorneys for the prosecution of this action, is obligated to pay a reasonable attorneys' fee and costs for legal services rendered in connection herewith, and is entitled to recovery of the same.

**Count I – Breach of Contract**

36. Plaintiff hereby incorporates as if fully stated herein paragraphs 1 through 35 above.

37. The Policy constitutes a valid and binding contract between the Plaintiff and Defendants.

38. A contract exists between the Plaintiff and Defendants.

39. The Plaintiff has satisfied all requirements under the Policy.

40. Defendants breached the Policy by refusing to pay losses incurred due to the funds transfer fraud suffered by the Plaintiff.

41. The Plaintiff has been damaged and lost money as a direct result of the Defendants' breach.

42. The Plaintiff has retained the undersigned to represent it in the instant matter, is obligated to pay a reasonable attorneys' fee for legal services rendered in connection therewith and is entitled to recovery of the same.

WHEREFORE, Plaintiff, The Landings Yacht, Golf and Tennis Club, Inc., respectfully requests that this Court enter a judgement in its favor against Defendant Carriers for damages, as well as an award of attorneys' fees and costs to Plaintiff, as well as an award of such other and further relief as the Court may deem just and proper in favor of Plaintiff.

### Jury Trial Demand

Plaintiff hereby demands a trial by jury of all issues so triable.

Hamilton Mikes, P.A.
3301 Bonita Beach Road, Suite 200
Bonita Springs, Florida 33134
(239) 594-7227

*/s/ Jason Hamilton Mikes*
Jason Hamilton Mikes, JD, MBA
Florida Bar No. 643211
Jason@HamiltonMikes.com                August 24, 2022

 **CRC Group**

## ENDORSEMENT FACE PAGE

**This page is the face of the endorsement referenced by number below and is a part of the policy.**

Insured's Name:  Landings Yacht, Golf and Tennis Club, Inc.
Policy Number:  C4M0A226772CYBER2020   Policy Dates:  From:  10/1/2020   To:  12/1/2021

Endorsement #:                                    Endorsement Effective Date: 10/8/2021

Surplus Lines Agent's Name:                  Marcia Whisman
Surplus Lines Agent's Address:               120 E. Palmetto Park Road, Suite 300
                                                            Boca Raton, FL 33432
Surplus Lines Agent's License:               # P134922

Producing Agent's Name:                       Jacqueline Diaz
Producing Agent's Physical Address:         13515 Bell Tower Dr.
                                                            Fort Myers, FL 33907

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

Endorsement  Premium:              $600.00
Tax:                                        $30.00
Service Fee:
FHCF Assessment:
Citizen's Assessment:

Surplus Lines Agent's Countersignature:    _Marcia W_____

If this policy is a surplus lines, personal lines residential property policy then the following shall apply:

## "THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

If this policy is a surplus lines, personal lines residential property policy which includes the peril of windstorm then the following shall apply:

## "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

 Coalition®

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**   **21**

### POLICY CHANGES

| Form Number | SP 15 654 0219 |
|---|---|
| Effective Date of Endorsement | October 08, 2021 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that this endorsement changes the policy effective on the inception date of the policy, unless another date is indicated above, in the following particulars:

| The following item(s): | is (are) deleted and replaced with the following: |
|---|---|
| ☐ Master Policy Number | |
| ☐ Item 1. Insured's Name and Address | |
| ☑ Item 2. Policy Period | From: October 01, 2020<br>To: December 01, 2021<br>Both dates 12:01 A.M. at the address stated in Item 1. |
| ☐ Item 4. Aggregate Policy Limit of Liability | |
| ☐ Item 5. Insuring Agreement(s) purchased, Limits of Liability, and Retentions | |
| ☐ Item 9. Retroactive Date | |
| ☐ Item 10. Continuity Date | |
| ☐ Item 11. Optional Extended Reporting Period | |
| ☐ Item 12. Choice of Law | |
| ☐ Endorsement No. | |
| for additional premium of $600.00 (annual premium of $0.00) and return premium of $0.00. | |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless

 Coalition*

otherwise stated herein.

 **CRC Group**

**FACE PAGE**

**This page is the face of the policy referenced by number below and is a part of the policy.**

Insured's Name:  <u>Landings Yacht, Golf and Tennis Club, Inc.</u>
Policy Number:  <u>C4M0A226772CYBER2020</u>   Policy Dates: From: <u>10/1/2020</u>  To: <u>10/1/2021</u>

| | |
|---|---|
| Surplus Lines Agent's Name: | <u>Marcia Whisman</u> |
| Surplus Lines Agent's Address: | <u>120 E. Palmetto Park Road, Suite 300</u> |
| | <u>Boca Raton, FL 33432</u> |
| Surplus Lines Agent's License: | <u># P134922</u> |
| Producing Agent's Name: | Jacqueline Diaz |
| Producing Agent's Physical Address: | 13515 Bell Tower Dr. |
| | Fort Myers, FL 33907 |

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

| | | | |
|---|---|---|---|
| Policy Premium: | $3,568.00 | Policy Fee: | $100.00 |
| Inspection Fee: | | Service Fee: | $2.20 |
| Tax: | $181.20 | Citizen's Assessment: | |
| EMPA Surcharge: | | FHCF Assessment: | |

Surplus Lines Agent's Countersignature:  _Marcia W_____

If this policy is a surplus lines, personal lines residential property policy then the following shall apply:

## "THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

If this policy is a surplus lines, personal lines residential property policy which includes the peril of windstorm then the following shall apply:

## "THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."

Coalition®

coalitioninc.com

# Cybersecurity & insurance to keep your business safe



Coalition is the best way for a company to manage cyber risk. We provide comprehensive insurance coverage, free cybersecurity tools to monitor and protect your business, and 24/7 expert incident response to help you quickly respond to a cyber incident.

## Hackers are smart, breaches are common, accidents happen. You need the most comprehensive protection. That's Coalition.

### State-of-the-art cybersecurity

Our cybersecurity platform includes 24/7 security monitoring, automated security alerts, employee training, and access to security experts to prevent cyber incidents before they occur.



### Best-in-class cyber insurance

We protect the value of your entire business including financial, intangible, and tangible damage with up to $15M of the most comprehensive cyber insurance.

## The most innovative and comprehensive coverage available.

Coalition covers more of the financial, tangible, and intangible exposures your business faces as than any other insurance company.



**Ransomware**
A hacker has encrypted all of your files and won't unlock them until you pay a ransom. Not to worry, we'll cover the costs to restore your data and get you up and running again.



**Wire Fraud and Social Engineering**
A funds transfer request is sent to your controller by someone pretending to be your CEO. The funds may be out the door, but at least you're not out of pocket—we've got you covered.



**Phishing and Data Breaches**
A hacker gains access to an employee's email or breaches your network. We'll cover costs to fix the problem and breach related expenses such as credit monitoring and regulatory penalties.

Coalition, Inc.   1160 Battery Street, Suite 350, San Francisco, CA 94111   help@coalitioninc.com

Insurance products underwritten by Coalition Insurance Solutions, Inc. (CA License #0L76155). Insurance policies are issued and backed by the financial security of North American Capacity Insurance Company, a member of Swiss Re Corporate Solutions, and Feius Insurance Company and Colony Specialty Insurance Company, members of Argo Pro US. Insurance products are available only through licensed surplus lines brokers. Copyright © 2020, All rights reserved. Coalition and the Coalition logo are trademarks of Coalition, Inc. or its affiliates.

SP 17 568 0320

## Coalition

coalitioninc.com

# Don't just protect your network, protect your business

We offer a full suite of security apps including 24/7 security monitoring, automated threat and intelligence alerts, DDoS mitigation, security benchmarking, ransomware protection, employee training, patch reminders, and more—included with each policy at no additional cost.



★ ★ ★ ★ ★

*"I never thought I'd say I was passionate about an insurance platform, but what you guys have built is exceptional."*

— VERIFIED COALITION POLICYHOLDER

## We're here for you when you need us most

Incidents happen, which is why you have insurance in the first place. Coalition is the only insurance firm with a dedicated 24/7 incident response and claims team to help you quickly respond to an incident. Join thousands of other organizations who rely on Coalition to provide emergency first response.

## The capabilities of Coalition. The financial backing of Swiss Re Corporate Solutions Ltd and Argo Pro US.

Coalition is the fastest growing provider of cyber insurance in the US. Coalition's products are offered with the financial security of Swiss Re Corporate Solutions Ltd (A.M. Best A+ rating), and Argo Pro US (A.M. Best A- rating).*

 Swiss Re     ARGO PRO

# Ready to protect your business?

To learn more visit **www.coalitioninc.com**

Coalition, Inc.   1160 Battery Street, Suite 350, San Francisco, CA 94111.   help@coalitioninc.com

Insurance products underwritten by Coalition Insurance Solutions, Inc. (CA License #0L76155). Insurance policies are issued and backed by the financial security of North American Capacity Insurance Company, a member of Swiss Re Corporate Solutions; and Pelus Insurance Company and Colony Specialty Insurance Company, members of Argo Pro US. Insurance products are available only through licensed surplus lines brokers. Copyright © 2020. All rights reserved. Coalition and the Coalition logo are trademarks of Coalition, Inc. or its affiliates.

SP 17.569.0320

 Coalition®

**Notice**

SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.

THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER.



Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

## Terrorism Risk Insurance Act (TRIA) Notice

Coverage for acts of terrorism is included in your Policy.  You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.  Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended.  However, your Policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism is 0.10%, and does not include any charges for the portion of losses covered by the United States government under the Act.

 Coalition°

Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

## COALITION CYBER POLICY

### POLICY DECLARATIONS

NOTICE: YOUR POLICY CONTAINS CLAIMS-MADE AND REPORTED COVERAGE. CLAIMS-MADE AND REPORTED COVERAGE APPLIES ONLY TO CLAIMS THAT ARE FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF PURCHASED. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIMS EXPENSES. FURTHERMORE, CLAIMS EXPENSES WILL BE APPLIED AGAINST THE RETENTION.

PLEASE READ YOUR POLICY CAREFULLY AND CONSULT YOUR INSURANCE ADVISOR ABOUT ANY QUESTIONS YOU MIGHT HAVE.

| | |
|---|---|
| Master Policy No.: | C-4M0A-226772-CYBER-2020 |
| Renewal of: | C-4M0A-226772-CYBER-2019 |

| | |
|---|---|
| Broker: | Daniel Alan Myer |
| Broker License Number: | E092346 |
| Agency: | CRC Insurance Services, Inc. |
| Agency Address: | One Metroplex Drive |
| | Suite 400 |
| | Birmingham, AL 35209 |

**Item 1.  Named Insured**

The Landings Yacht Golf & Tennis Club, Inc.

**Address**

4425 South Landings Drive
#100
Fort Myers, FL 33919

**Item 2.  Policy Period**

From: October 01, 2020
To: October 01, 2021
*Both dates at 12:01 AM at the address stated in Item 1.*

**Item 3.  Policy Premium**

| | |
|---|---|
| Premium without TRIA | $3,564.43 |
| TRIA Premium | $3.57 |
| **Policy Premium** | **$3,568.00** |

**Item 4.  Aggregate Policy Limit of Liability**

$2,000,000



Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

**Item 5.** **Insuring Agreement(s) purchased, Limits of Liability, and Retentions**

Coverage under this policy is provided only for those Insuring Agreements for which a limit of liability appears below.  If no limit of liability is shown for an Insuring Agreement, such Insuring Agreement is not provided by this policy.  The Aggregate Policy Limit of Liability shown above is the most the Insurer(s) will pay regardless of the number of Insured Agreements purchased.

**THIRD PARTY LIABILITY COVERAGES**

| Insuring Agreement | | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|---|
| A. | NETWORK AND INFORMATION SECURITY LIABILITY | $2,000,000 | $5,000 |
| B. | REGULATORY DEFENSE AND PENALTIES | $2,000,000 | $5,000 |
| C. | MULTIMEDIA CONTENT LIABILITY | $2,000,000 | $5,000 |
| D. | PCI FINES AND ASSESSMENTS | $2,000,000 | $5,000 |

**FIRST PARTY LIABILITY COVERAGES**

| Insuring Agreement | | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|---|
| E. | BREACH RESPONSE | $2,000,000 | $5,000 |
| F. | CRISIS MANAGEMENT AND PUBLIC RELATIONS | $2,000,000 | $5,000 |
| G. | CYBER EXTORTION | $2,000,000 | $5,000 |
| H. | BUSINESS INTERRUPTION AND EXTRA EXPENSES | $2,000,000 | $5,000<br>i. Waiting period: 8 hours<br>ii. Enhanced waiting period: 8 hours |
| I. | DIGITAL ASSET RESTORATION | $2,000,000 | $5,000 |
| J. | FUNDS TRANSFER FRAUD | $500,000 | $25,000 |

**Item 6.** **Pre-Claim Assistance** $890

**Item 7.** **Insurers and Quota Share Percentage**

| Insurer | Policy No. | Quota Share % of Loss | Quota Share Limit of Liability | Premium |
|---|---|---|---|---|
| North American Capacity Insurance Company | CCP1007458-01 | 51.0% | $1,020,000 | $1,819.68 |
| Peleus Insurance Company | CCP1007458-01 | 49.0% | $980,000 | $1,748.32 |

The obligations of each Insurer in this Item 7. of these Declarations are limited to the extent of its Quota Share % of Loss up to its Quota Share Limit of Liability.

 Coalition®

Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

| | | | |
|---|---|---|---|
| **Item 8.** | **Notification of incidents, claims, or potential claims** | By Email | |
| | | Attn: Coalition Claims | |
| | | claims@thecoalition.com | |
| | | | |
| | | By Phone | |
| | | 1.833.866.1337 | |
| | | | |
| | | By Mail | |
| | | Attn: Coalition Claims | |
| | | 1160 Battery Street, Suite 350 | |
| | | San Francisco, CA 94111 | |
| **Item 9.** | **Retroactive Date** | Full prior acts coverage | |
| **Item 10.** | **Continuity Date** | October 01, 2019 | |
| **Item 11.** | **Optional Extended Reporting Period** | Additional premium: | N/A |
| | | Extended period: | N/A |
| **Item 12.** | **Choice of Law** | FL | |



Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

**Item 13.**   **Endorsements and Forms Effective at Inception**

| | |
|---|---|
| DECLARATIONS | SP 14 797 1018 |
| COALITION CYBER POLICY | SP 14 798 1117 |
| QUOTA SHARE ENDORSEMENT | SP 15 629 0218 |
| SERVICE OF SUIT ENDORSEMENT | SP 14 927 0219 |
| BODILY INJURY AND PROPERTY DAMAGE ENDORSEMENT – 1ST PARTY | SP 14 799 1117 |
| BODILY INJURY AND PROPERTY DAMAGE ENDORSEMENT – 3RD PARTY | SP 14 800 0518 |
| COMPUTER REPLACEMENT ENDORSEMENT | SP 17 514 0419 |
| POLLUTION ENDORSEMENT | SP 14 801 0318 |
| REPUTATION REPAIR ENDORSEMENT | SP 14 802 1117 |
| REPUTATIONAL HARM LOSS ENDORSEMENT | SP 16 383 0718 |
| SERVICE FRAUD ENDORSEMENT | SP 16 183 0518 |
| BREACH RESPONSE SEPARATE LIMIT ENDORSEMENT | SP 16 296 0618 |
| INVOICE MANIPULATION ENDORSEMENT | SP 17 813 0819 |
| MISCELLANEOUS AMENDMENTS (CRC INSURANCE SERVICES) ENDORSEMENT | SP 16 857 0119 |
| REGULATORY COVERAGE ENHANCEMENT ENDORSEMENT – CCPA AND GDPR | SP 17 147 1119 |
| CRIMINAL REWARD COVERAGE ENDORSEMENT | SP 16 670 0818 |
| COURT ATTENDANCE COST REIMBURSEMENT ENDORSEMENT | SP 16 777 0918 |
| MULTI-FACTOR AUTHENTICATION (MFA) RETENTION REDUCTION | SP 17 814 0819 |
| DUTY TO COOPERATE ENDORSEMENT | SP 17 274 0219 |
| YOUR OBLIGATIONS AS AN INSURED ENDORSEMENT | SP 17 275 0219 |
| ENHANCED WAITING PERIOD FOR DENIAL OF SERVICE | SP 14 805 1117 |

THE DECLARATIONS, THE APPLICATION, THE COALITION CYBER POLICY, AND ANY ENDORSEMENTS ATTACHED THERETO, CONSTITUTE THE ENTIRE POLICY BETWEEN US, THE ENTITY NAMED IN ITEM 1 OF THE DECLARATIONS, AND ANY INSURED.

IN WITNESS WHEREOF, we have caused this Policy to be signed officially below.

_Authorized Representative_

September 10, 2020
Date

 Coalition®

Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

Coalition Insurance Solutions, Inc.



Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

IN WITNESS THEREOF, the issuing company has caused this policy to be signed officially below.

_____
President

_____
Secretary

**North American Capacity Insurance Company**

 Coalition®

Coalition Insurance Solutions, Inc.
FL License No. L100906
1160 Battery Street, Suite 350
San Francisco, CA 94111
Producer Code: 1035616

**Surplus lines insurers' policy rates and forms are not approved by any Florida regulatory agency.**

IN WITNESS WHEREOF, the company issuing this policy has caused this policy to be signed by its President and its Secretary and countersigned (if required) on the Declarations page by a duly authorized representative of the company. This endorsement is executed by the company stated in the Declarations.

Peleus Insurance Company

_____
President

_____
Secretary

SP 14 797 1018

 Coalition

## COALITION CYBER POLICY

**SECTION I**

INTRODUCTION

This Policy is a contract of insurance between the **named insured** and **us**. This Policy includes and must be read together with the Declarations page and any Endorsements.

The insurance provided under this Policy for **claims** made against **you** is on a claims made and reported basis, and applies to **claims** only if they are first made against **you** during the **policy period** and reported to **us** during the **policy period** or any applicable Optional Extended Reporting Period. **Claim expenses** reduce the applicable Limits of Liability and are subject to retentions.

Please note that the terms in bold lower case print are defined terms and have special meaning as set forth in Section IX, DEFINITIONS.

**SECTION II**

WHAT WE COVER – OUR INSURING AGREEMENTS

In consideration of the **named insured's** payment of the premium, in reliance upon the information provided to **us**, including in and with the **application**, and subject to the Limits of Liability and applicable Retention(s), exclusions, conditions, and other terms of this Policy, **we** agree to provide the following insurance coverage provided that:

1. The **claim** is made against **you** during the **policy period**, and is reported to **us** during the **policy period** or any applicable Optional Extended Reporting Period;
2. The **incident**, **privacy liability**, or **multimedia wrongful act** first took place after the **retroactive date** and before the end of the **policy period**; and
3. Notice is provided in accordance with Section IV, YOUR OBLIGATIONS AS AN INSURED.

 Coalition

THIRD PARTY LIABILITY COVERAGES

A.  NETWORK AND INFORMATION SECURITY LIABILITY

**We** will pay on **your** behalf **claim expenses** and **damages** that **you** become legally obligated to pay resulting from a **claim** against **you** for a **security failure**, **data breach**, or **privacy liability**.

B.  REGULATORY DEFENSE AND PENALTIES

**We** will pay on **your** behalf **claim expenses** and **regulatory penalties** that you become legally obligated to pay resulting from a **claim** against **you** in the form of a **regulatory proceeding** for a **security failure** or **data breach**.

C.  MULTIMEDIA CONTENT LIABILITY

**We** will pay on **your** behalf **claim expenses** and **damages** that **you** become legally obligated to pay resulting from a **claim** against **you** for a **multimedia wrongful act**.

D.  PCI FINES AND ASSESSMENTS

**We** will pay on **your** behalf **PCI fines and assessments** that **you** become legally obligated to pay resulting from a **claim** against **you** for a **security failure** or **data breach** compromising payment card data.

FIRST PARTY COVERAGES

E.  BREACH RESPONSE

**We** will pay on **your** behalf **breach response costs** resulting from an actual or suspected **security failure** or **data breach** first discovered by **you** during the **policy period**.

F.  CRISIS MANAGEMENT AND PUBLIC RELATIONS

**We** will pay on **your** behalf **crisis management costs** resulting from a **public relations event** first discovered by **you** during the **policy period**.

G.  CYBER EXTORTION

**We** will pay on **your** behalf **cyber extortion expenses** resulting from **cyber extortion** first discovered by **you** during the **policy period**.

H.  BUSINESS INTERRUPTION AND EXTRA EXPENSES

**We** will pay **business interruption loss** and **extra expenses** that **you** incur during the **indemnity period** directly resulting from the partial or complete interruption of **computer systems** for a period longer than the **waiting period** caused by a **security failure** or **systems failure** first discovered by **you** during the **policy period**.

The **waiting period** for any failure of **computer systems** caused by a **denial of service attack** will be the period of time set forth in Item 5.H.ii. of the Declarations. The **waiting period** for all other causes of failure of **computer systems** will be the period of time set forth in Item 5.H.i. of the Declarations.

I.  DIGITAL ASSET RESTORATION

**We** will pay on **your** behalf **restoration costs** that **you** incur because of the alteration, destruction, damage, theft, loss, or inability to access **digital assets** directly resulting from a **security failure** first discovered by **you** during the **policy period**.

 Coalition

| | | |
|---|---|---|
| J. | FUNDS TRANSFER FRAUD | **We** will pay on **your** behalf direct **funds transfer loss** that **you** incur resulting from a **funds transfer fraud** first discovered by **you** during the **policy period**. |

## SECTION III

| | | |
|---|---|---|
| | EXCLUSIONS – WHAT IS NOT COVERED | This policy does not apply to and **we** will not make any payment for any **claim expenses, damages, loss, regulatory penalties, PCI fines and assessments**, or any other amounts directly or indirectly arising out of, resulting from, based upon, or attributable to: |
| A. | BODILY INJURY | Any physical injury, sickness, disease, mental anguish, emotional distress, or death of any person, provided, however, that this exclusion will not apply to any **claim** for mental anguish or emotional distress under Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY. |
| B. | CONFISCATION | Confiscation, nationalization, requisition, destruction of, or damage to any property, **computer system**, software, or electronic data by order of any governmental or public authority. |
| C. | CONTRACTUAL LIABILITY | Any contractual liability or obligation or any breach of contract or agreement either oral or written, provided, however, that this exclusion will not apply: |

1. with respect to the coverage provided by Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY, and Section II.E, BREACH RESPONSE, to **your** obligations to maintain the confidentiality or security of **personally identifiable information** or **third party corporate information**;
2. with respect to the coverage provided by Section II.C, MULTIMEDIA CONTENT LIABILITY, to misappropriation of ideas under implied contract;
3. with respect to the coverage provided by Section II.D, PCI FINES AND ASSESSMENTS; and
4. to the extent **you** would have been liable in the absence of such contract or agreement.

| | | |
|---|---|---|
| D. | DIRECTOR & OFFICERS LIABILITY | Any act, error, omission, or breach of duty by any director or officer in the discharge of his or her duty if the **claim** is brought by or on behalf of the **named insured**, a **subsidiary**, or any principals, directors, officers, stockholders, members, or **employees** of the **named insured** or a **subsidiary**. |
| E. | DISCRIMINATION | Any discrimination of any kind. |
| F. | EMPLOYMENT PRACTICES & DISCRIMINATION | Any employer-employee relations, policies, practices, acts, or omissions. However, this exclusion will not apply to a **claim** by a current or former **employee** under Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY or to **breach response costs** under Section II.E, BREACH RESPONSE impacting current or former **employees**. |

 Coalition

| | | |
|---|---|---|
| G. | FRAUD BY A SENIOR EXECUTIVE | Any dishonest, fraudulent, criminal, or malicious act or omission of any **senior executive**. However, this exclusion does not apply to **claim expenses** incurred in defending any such **claim** until and unless a final and non-appealable adjudication establishes that a **senior executive** committed such dishonest, fraudulent, criminal, or malicious act or omission, at which time the **named insured** will reimburse **us** for all **claim expenses we** incurred or paid in defending such **claim**. |
| | | This exclusion will not apply to any **insured** person who did not allegedly or actually participate in or otherwise be involved in the dishonest, fraudulent, criminal, or malicious act or omission. |
| H. | GOVERNMENTAL ORDERS | Any court order or demand requiring **you** to provide **personally identifiable information** to any domestic or foreign law enforcement, administrative, regulatory, or judicial body or other governmental authority. |
| I. | ILLEGAL REMUNERATION | Any profit, remuneration, or advantage to which **you** are not legally entitled. However, this exclusion does not apply to **claim expenses** incurred in defending any such **claim** until and unless a final and non-appealable adjudication establishes the gaining of any profit, remuneration, or advantage to which **you** are not legally entitled, at which time the **named insured** will reimburse **us** for all **claim expenses we** incurred or paid in defending such **claim**. |
| J. | INSURED VERSUS INSURED | Any **claim** made by or on behalf of: |

1. an **insured** under this Policy; however, this exclusion will not apply to an otherwise covered **claim** made by an **employee** arising from a **security failure** or **data breach**;
2. any business enterprise in which **you** have greater than a twenty percent (20%) ownership interest; or
3. any parent company or other entity that owns more than twenty percent (20%) of an **insured**.

| | | |
|---|---|---|
| K. | INTELLECTUAL PROPERTY | Violation or infringement of any intellectual property right or obligation, including: |

1. infringement of copyright of software, firmware, or hardware;
2. misappropriation, misuse, infringement, or violation of any patent or trade secret;
3. distribution or sale of, or offer to distribute to sell, any goods, products, or services; or
4. other use of any goods, products, or services that infringes or violates any intellectual property law or right relating to the appearance, design, or function of any goods, products, or services;

however, this exclusion will not apply to Section II.C, MULTIMEDIA CONTENT LIABILITY, for an otherwise covered **claim** for a **multimedia wrongful act**, provided that, this exception to exclusion K. INTELLECTUAL PROPERTY shall not apply to any violation or infringement of any intellectual property right or obligation described in items 1. and 2. above.

 Coalition

| | | |
|---|---|---|
| L. | MERCHANT LIABILITY | Any charge back, interchange fee, discount fee, service related fee, rate, or charge; or liability or fee incurred by **you** due to a merchant service provider, payment processor, payment card company, or bank reversing or freezing payment transactions, except that this exclusion will not apply to coverage afforded under Section II.D, PCI FINES AND ASSESSMENTS. |
| M. | NATURAL DISASTER | Any physical event or natural disaster, including fire, flood, earthquake, volcanic eruption, explosion, lightning, wind, hail, tidal wave, and landslide. |
| N. | NUCLEAR | Any exposure or threatened exposure to any radioactive matter or any form of radiation or contamination by radioactivity of any kind or from any source. This exclusion applies regardless of whether any other causes, events, materials, or products contributed concurrently or in any sequence to the **claim** or **incident**, or the liability or legal obligation alleged or existing. |
| O. | POLLUTANTS | Any: |

1. discharge, dispersal, seepage, migration, release, or escape of **pollutants**, or any threatened discharge, seepage, migration, release, or escape of **pollutants**; or
2. request, demand, order, or statutory or regulatory requirement that **you** or others detect, report, test for, monitor, clean up, remove, remediate, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; including any **claim**, suit, notice, or proceeding by or on behalf of any governmental authority or quasi-governmental authority, a potentially responsible party or any other person or entity for any amounts whatsoever because of detecting, reporting, testing for, monitoring, cleaning up, removing, remediating, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants**.

This exclusion applies regardless of whether any other causes, events, materials, or products contributed concurrently or in any sequence to the **claim** or **incident**, or the liability or legal obligation alleged or existing.

| | | |
|---|---|---|
| P. | PRIOR KNOWLEDGE | |

1. any **incident**, act, error, or omission that any **senior executive** on or before the **continuity date** knew or could have reasonably foreseen might be the basis of a **claim** or **loss** under this Policy; or
2. any **claim**, **incident**, or circumstance which has been the subject of any notice given to the insurer of any other policy in force prior to the inception date of this Policy.

| | | |
|---|---|---|
| Q. | RECALL | Any withdrawal, recall, inspection, adjustment, removal, or disposal of any property, tangible or intangible, including **computer systems** and their component parts, mobile devices, and mechanical equipment. |

 Coalition

| R. | REPAIR | Any repair, replacement, recreation, restoration, or maintenance of any property, tangible or intangible, including **computer systems** and their component parts, mobile devices, and mechanical equipment. This exclusion does not apply to **damages** that **you** are legally obligated to pay resulting from a **claim** and that are otherwise covered under this Policy, or to coverage afforded under Sections II.H, BUSINESS INTERRUPTION AND EXTRA EXPENSES, and II.I, DIGITAL ASSET RESTORATION. |
|---|---|---|
| S. | RETROACTIVE DATE | Any **incident**, act, error, or omission that took place prior to the **retroactive date**, or any related or continuing acts, errors, omissions, or **incidents** where the first such act, error, omission, or **incident** first took place prior to the **retroactive date**. |
| T. | TANGIBLE PROPERTY | Any injury or damage to, destruction, impairment, or loss of use of any tangible property, including any computer hardware rendered unusable by a **security failure**. |
| U. | THIRD PARTY MECHANICAL FAILURE | Electrical, mechanical failure, or interruption (including blackouts, brownouts, power surge, or outage) or other utility failure, interruption, or power outage, of a third party, including telecommunications and other communications, internet service, website hosts, server services, satellite, cable, electricity, gas, water, or other utility or power service providers. However, this exclusion will not apply to **business interruption loss** under Section II.H, BUSINESS INTERRUPTION AND EXTRA EXPENSES, where such loss arises directly from the **service provider** directly experiencing their own **security failure**. |
| V. | UNFAIR TRADE PRACTICE | Any false, unlawful, deceptive, or unfair trade practices; however, this exclusion does not apply to a **claim** under Section II.B, REGULATORY DEFENSE AND PENALTIES arising from a **security failure** or **data breach**. |
| W. | VIOLATION OF ACTS/LAWS | Any violation of: |

1. the Employee Retirement Income Security Act of 1974 (ERISA);
2. the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Act of 1940, and any other federal or state securities laws;
3. the Organized Crime Control Act of 1970 (RICO);
4. the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 (CAN-SPAM);
5. Telephone Consumer Protection Act (TCPA);
6. the Sherman Anti-Trust Act, the Clayton Act, or any price fixing, restraint of trade, or monopolization statute; or
7. any similar local, state, federal, common, or foreign laws or legislation to the laws described in 1. through 6. above.

| X. | WAR AND TERRORISM | War, invasion, acts of foreign enemies, terrorism, hostilities, civil war, rebellion, revolutions, insurrection, military, or usurped power; however, this exclusion will not apply to **cyber terrorism**. |
|---|---|---|

## SECTION IV

 Coalition

YOUR OBLIGATIONS AS AN
INSURED

**WHEN THERE IS A CLAIM OR
INCIDENT**

You must provide **us** written notice of a **claim** or **incident** through the persons named in Item 8. of the Declarations as soon as practicable once such **claim** or **incident** is known to a **senior executive**. In no event will such notice to **us** be later than: (i) the end of the **policy period**; (ii) or 60 days after the end of the **policy period** for **claims** made against you or **incidents** discovered by **you** in the last 30 days of the **policy period**.

**WHEN THERE IS A
CIRCUMSTANCE**

If during the **policy period**, **you** become aware of any circumstances that could reasonably be expected to give rise to a **claim**, **you** may give written notice to **us** through the persons named in Item 8. of the Declarations as soon as practicable during the **policy period**. Such notice must include:

1. a detailed description of the act, event, **security failure**, or **data breach** that could reasonably be the basis for a **claim**;
2. the details of how you first became aware of the act, event, **security failure**, or **data breach**; and
3. the identity of potential claimants.

Any **claim** arising out of a circumstance reported under this Section will be deemed to have been made and reported at the time written notice complying with the above requirements is provided to **us**.

**DUTY TO COOPERATE**

**We** will have the right to make any investigation **we** deem necessary, and **you** will cooperate with **us** in all investigations, respond to reasonable requests for information, and execute all papers and render all assistance as requested by **us**. In addition, **you** will make reasonable efforts to promptly address any **computer systems** vulnerabilities that a **senior executive** becomes aware of during the **policy period**. **You** will also cooperate with counsel in the defense of all **claims** and response to all **incidents** and provide all information necessary for appropriate and effective representation.

With respect to Section II.G, CYBER EXTORTION, **you** must make every reasonable effort not to divulge the existence of this coverage, without first seeking **our** prior consent.

**OBLIGATION TO NOT INCUR
ANY EXPENSE OR ADMIT
LIABILITY**

**You** will not admit liability, make any payment, assume any obligation, incur any expense, enter into any settlement, stipulate to any judgment, or award or dispose of any **claim** without **our** prior written consent, except as specifically provided in Section V, CLAIMS PROCESS. Compliance with **breach notice law** will not be considered as an admission of liability for purposes of this paragraph.

Expenses incurred by **you** in assisting and cooperating with **us** do not constitute **claim expenses** or **loss** under this Policy.

 Coalition

| OBLIGATION TO PRESERVE OUR RIGHT OF SUBROGATION | In the event of any payment by **us** under this Policy, **we** will be subrogated to all of **your** rights of recovery. **You** will do everything necessary to secure and preserve such subrogation rights, including the execution of any documents necessary to enable **us** to bring suit in **your** name. **You** will not do anything after an **incident** or event giving rise to a **claim** or **loss** to prejudice such subrogation rights without first obtaining **our** consent. |
|---|---|
| AUTHORIZATION OF NAMED INSURED TO ACT ON BEHALF OF ALL INSUREDS | It is agreed that the **named insured** shall act on behalf of all **insureds** with respect to the giving of notice of a **claim**, giving and receiving of notice of cancellation and non-renewal, payment of premiums and receipt of any return premiums that may become due under this Policy, receipt and acceptance of any endorsements issued to form a part of this Policy, exercising or declining of the right to tender the defense of a **claim** to **us**, and exercising or declining to exercise of any right to an Optional Extended Reporting Period. |

## SECTION V

### CLAIMS PROCESS

| DEFENSE | **We** will have the right and duty to defend, subject to the Limits of Liability and applicable Retention(s), exclusions, conditions, and other terms of this Policy: |
|---|---|

1. any **claim** against **you** seeking **damages** that are payable under the terms of this Policy; or
2. under Section II.B, REGULATORY DEFENSE AND PENALTIES, any **claim** in the form of a **regulatory proceeding**.

**You** have the right to select defense counsel from **our** Panel Providers. If **you** would like to retain defense counsel that is not on **our** list of Panel Providers, such counsel will be mutually agreed upon between **you** and **us**, which agreement will not be unreasonably withheld.

**We** will pay **claim expenses** incurred with **our** prior written consent with respect to any **claim** seeking **damages** or **regulatory penalties** payable under this Policy. **We** will have no obligation to pay **claim expenses** until **you** have satisfied the applicable Retention.

The Limits of Liability of this Policy will be reduced and may be completely exhausted by payment of **claim expenses**. **Our** duty to defend ends once the applicable Limit of Liability is exhausted, or after deposit of the amount remaining on the applicable Limit of Liability in a court of competent jurisdiction. Upon such payment, **we** will have the right to withdraw from the defense of the **claim**.

| RIGHT TO ASSOCIATE | **We** have the right, but not the duty, to associate in the investigation and response to any **incident**, including participation in the formation of strategy and review of forensic investigations and reports. |
|---|---|

 Coalition

| | |
|---|---|
| PRE-CLAIM ASSISTANCE | If **we** are provided with notice of an **incident** or of a circumstance that is not yet a **claim** or **incident** under Section IV, YOUR OBLIGATIONS AS AN INSURED, and **you** request **our** assistance to mitigate against such a **claim** or **incident**, **we** may, in **our** discretion, agree to pay for up to the amount shown in Item 6. of the Declarations in legal, forensic, and IT fees. Any such fees must be incurred with **our** prior consent by an attorney or consultant we have mutually agreed upon. Such attorney's and consultant's fees will be considered **claim expenses** or **loss** and will be subject to the Limits of Liability that would be applicable if a covered **claim** is made, and is also subject to the Policy's Aggregate Limit of Liability. |
| SETTLEMENT | If **you** refuse to consent to any settlement or compromise recommended by **us** and acceptable to the claimant, **our** liability for such **claim** will not exceed: |

1. the amount for which such **claim** could have been settled, less the retention, plus **claim expenses** incurred up to the time of such refusal; and
2. fifty percent (50%) of **claim expenses** incurred after such settlement was refused by **you**, plus fifty percent (50%) of **damages** and **regulatory penalties** in excess of the amount such **claim** could have settled under such settlement.

In this event, **we** will have the right to withdraw from the further defense of such **claim** or **regulatory proceeding** by tendering control of the defense thereof to **you**. The operation of this paragraph will be subject to the Limits of Liability and Retention provisions of this Policy.

| | |
|---|---|
| SETTLEMENT WITHIN RETENTION | **We** agree that **you** may settle any **claim** where the total **loss**, **damages**, **regulatory penalties**, **PCI fines and assessments**, and **claim expenses** do not exceed the applicable Retention, provided the entire **claim** is resolved and **you** obtain a full release from all claimants. |

 Coalition

PROOF OF LOSS

With respect to **business interruption loss** and **extra expenses**, **you** must complete and sign a written, detailed, and affirmed proof of loss within 90 days after **your** discovery of the **computer systems** failure (unless such period has been extended by the underwriters in writing) which will include, at a minimum, the following information:

1. a full description of the circumstances, including, without limitation, the time, place, and cause of the **loss**;
2. a detailed calculation of any **business interruption loss** and **extra expenses**; and all underlying documents and materials that reasonably relate to or form part of the basis of the proof of such **business interruption loss** and **extra expenses**.

Any costs incurred by **you** in connection with establishing or proving **business interruption loss** or **extra expenses**, including preparing a proof of loss, will be **your** obligation and is not covered under this Policy.

Solely with respect to verification of **business interruption loss**, **you** agree to allow **us** to examine and audit **your** books and records that relate to this Policy at any time during the **policy period** and up to 12 months following a **loss**.

## SECTION VI

LIMITS OF LIABILITY
AND RETENTION

LIMITS OF LIABILITY

The Aggregate Limit of Liability set forth in Item 4. of the Declarations is the maximum amount we will be liable to pay for all **damages**, **loss**, **PCI fines and assessments**, **regulatory penalties**, **claim expenses**, and other amounts under this Policy, regardless of the number of **claims**, **incidents**, or **insureds**.

The Limits of Liability set forth in Item 5. of the Declarations is the maximum amount we will be liable to pay for all **damages**, **loss**, **PCI fines and assessments**, **regulatory penalties**, **claim expenses**, and other amounts under each Insuring Agreement, regardless of the number of **claims**, **incidents**, or **insureds**. Such Limits of Liability are part of, and not in addition to, the Aggregate Limit of Liability. The reference to applicable Limits of Liability herein refers to each participating Insurer's individual Quota Share Limit of Liability as stated in Item 7. of the Declarations.

**Our** Limits of Liability for an Optional Extended Reporting Period, if applicable, will be part of, and not in addition to the Aggregate Limit of Liability set forth in Item 4. of the Declarations.

 Coalition

RETENTION

**We** will only be liable for those amounts payable under this Policy which are in excess of the applicable Retention(s). Such Retention(s) must be paid by **you** and cannot be insured.

In the event that **damages**, **PCI fines and assessments**, **regulatory penalties**, **claim expenses**, **breach response costs**, **business interruption loss**, **crisis management costs**, **cyber extortion expenses**, **extra expenses**, **funds transfer loss**, **restoration costs**, or other amounts arising out of a **claim** or **incident** are subject to more than one Retention, the applicable Retention amount will apply to such **damages**, **PCI fines and assessments**, **regulatory penalties**, **claim expenses**, **breach response costs**, **business interruption loss**, **crisis management costs**, **cyber extortion expenses**, **extra expenses**, **funds transfer loss**, **restoration costs**, or other amounts, provided that the sum of such Retention amounts will not exceed the largest applicable Retention amount.

SECTION VII

CANCELLATION AND
OPTIONAL EXTENDED
REPORTING PERIOD



CANCELLATION AND NON-RENEWAL

**We** may cancel or elect not to renew this Policy by mailing to the **named insured** at the address shown in Item 1. of the Declarations, written notice stating when the cancellation or non-renewal will be effective. Where permitted by applicable law, we may provide such written notice of cancellation or non-renewal by electronic transmission. Such cancellation or non-renewal will not be less than sixty (60) days after such notice is mailed (or ten (10) days thereafter when cancellation is due to non-payment of premium or fraud or material misrepresentation). The mailing of such notice as aforesaid will be sufficient proof of notice and this Policy will terminate at the date and hour specified in such notice.

This Policy may be cancelled by **us** for non-payment of premium, or by fraud or material misrepresentation by **you** in the **application** or other information provided to induce **us** to issue this Policy; or fraud by **you** in connection with the submission of any **claim** or **incident** for coverage under this Policy.

This Policy may be cancelled by the **named insured** by surrender of this Policy to **us** or by giving written notice to **us** stating when thereafter such cancellation will be effective.

If this Policy is cancelled in accordance with the paragraphs above, the earned premium will be computed pro rata, but the premium will be deemed fully earned if any **claim**, **incident**, or any circumstance that could reasonably be expected to give rise to a **claim**, is reported to **us** on or before the date of cancellation.

If **we** elect not to renew this Policy, **we** shall mail to **you** written notice thereof at least sixty (60) days prior to the expiration of the **policy period**.

**We** have no obligation to renew this Policy.

 Coalition

OPTIONAL EXTENDED
REPORTING PERIOD

In the event of cancellation or non-renewal of this Policy, by either the **named insured** or **us**, for reasons other than fraud or material misrepresentation in the **application** for this Policy, or non-payment of premium or Retention, the **named insured** will have the right, upon payment in full of an additional premium, to purchase an Optional Extended Reporting Period under this Policy, subject to all terms, conditions, limitations of, and any endorsements to this Policy, for a period of either:

a.   one year for an additional premium of 100% of the total annual premium; or
b.   two years for an additional premium of 150% of the total annual premium; or
c.   three years for an additional premium of 200% of the total annual premium

following the effective date of such cancellation or non-renewal.

Such Optional Extended Reporting Period applies only to a **claim** first made against you during the Optional Extended Reporting Period arising out of any act, error, or omission committed on or after the **retroactive date** and before the end of the **policy period**, subject to the Retention, Limits of Liability, exclusions, conditions, and other terms of this Policy. The offer of renewal terms, conditions, Limits of Liability, and/or premiums different from those of this Policy will not constitute a cancellation or refusal to renew.

The Optional Extended Reporting Period will terminate on the effective date and hour of any other insurance issued to the **named insured** or the **named insured's** successor that replaces in whole or in part the coverage afforded by the Optional Extended Reporting Period.

The **named insured's** right to purchase the Optional Extended Reporting Period must be exercised in writing no later than sixty (60) days following the cancellation or non-renewal date of this Policy, and must include payment of premium for the applicable Optional Extended Reporting Period as well as payment of all premiums due to **us**. If such written notice is not given to **us**, the **named insured** will not, at a later date, be able to exercise such right.

At the commencement of any Optional Extended Reporting Period, the entire premium thereafter will be deemed earned and in the event the **named insured** terminates the Optional Extended Reporting Period before its expiring date, **we** will not be liable to return any portion of the premium for the Optional Extended Reporting Period.

The fact that the time to report **claims** under this Policy may be extended by virtue of an Optional Extended Reporting Period will not in any way increase the Limits of Liability, and any amounts incurred during the Optional Extended Reporting Period will be part of, and not in addition to



the Limits of Liability as stated in the Declarations. The Optional Extended Reporting Period will be renewable at **our** sole option.

## SECTION VIII

### SANCTIONS

This Policy does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit **us** from providing insurance, including but not limited to payment of **claims**.

## SECTION IX

### DEFINITIONS

Words and phrases that appear in lowercase bold in this Policy have the meanings set forth below:

### Application

means all applications, including any attachments thereto and supplemental information, submitted by or on behalf of the **named insured** to **us** in connection with the request for or underwriting of this Policy, or any prior policy issued by **us** of which this Policy is a renewal thereof.

### Breach notice law

means any statute or regulation, including from the United States, European Union, or other country that requires: (i) notice to persons whose **personally identifiable information** was, or reasonably considered likely to have been, accessed or acquired by an unauthorized person; or (ii) notice to regulatory agencies of such incident.

 Coalition

| | |
|---|---|
| Breach response costs | means the following reasonable and necessary costs **you** incur with **our** prior written consent in response to an actual or suspected **security failure** or **data breach**: |

1. computer forensic professional fees and expenses to determine the cause and extent of a **security failure**;
2. costs to notify individuals affected or reasonably believed to be affected by such **security failure** or **data breach**, including printing costs, publishing costs, postage expenses, call center costs, and costs of notification via phone or e-mail;
3. costs to provide government mandated public notices related to such **security failure** or **data breach**;
4. legal fees and expenses to advise **you** in connection with **your** investigation of a **security failure** or **data breach** and to determine whether **you** are legally obligated under a **breach notice law** to notify applicable regulatory agencies or individuals affected or reasonably believed to be affected by such **security failure** or **data breach**;
5. legal fees and expenses to advise **you** in complying with Payment Card Industry ("PCI") operating regulation requirements for responding to a **security failure** or **data breach** compromising payment card data, and the related requirements under a **merchant services agreement** (this clause does not include any fees or expenses incurred in any legal proceeding, arbitration, or mediation, for any advice in complying with any PCI rules or regulations other than for assessment of **PCI fines and assessments** for a covered **security failure** or **data breach**, or to remediate the breached **computer systems**); and
6. costs to provide up to one year (or longer if required by law) of a credit or identity monitoring program to individuals affected by such **security failure** or **data breach**.

**Breach response costs** must be incurred within one year of **your** discovery of an actual or suspected **security failure** or **data breach**. **You** have **our** prior consent to incur **breach response costs** in the form of computer forensic fees under paragraph 1. and legal fees under paragraphs 4. and 5. with any vendor on **our** list of Panel Providers.

| | |
|---|---|
| Business interruption loss | means: |

1. the net profit that would have been earned before income taxes, or net loss that would not have been incurred, directly due to the partial or complete interruption of **computer systems**; and
2. continuing normal operating expenses, including payroll.

Provided, however, that **business interruption loss** shall not include net profit that would likely have been earned as a result of an increase in volume due to favorable business conditions caused by the impact of network security failures impacting other businesses, loss of market, or any other consequential loss.

 Coalition

| Claim | means: |
| | |

1. a written demand for money or services, including the service of a suit or institution of arbitration proceedings;
2. with respect to coverage provided under Section II.B, REGULATORY DEFENSE AND PENALTIES, a **regulatory proceeding**; and
3. a written request or agreement to toll or waive a statute of limitations relating to a potential **claim** described in paragraph 1 above.

All **claims** that have a common nexus of fact, circumstance, situation, event, transaction, or cause, or a series of related facts, circumstances, situations, events, transactions, or causes will be considered a single **claim** made against **you** on the date the first such **claim** was made.

| Claim expenses | means: |

1. reasonable and necessary fees charged by an attorney to which **we** have agreed to defend a **claim**;
2. all other fees, costs, and charges for the investigation, defense, and appeal of a **claim**, if incurred by **us** or by **you** with **our** prior written consent; and
3. premiums on appeal bonds, provided that **we** will not be obligated to apply for or furnish such appeal bonds.

**Claim expenses** do not include salary, charges, wages, or expenses of any **senior executive** or **employee**, or costs to comply with any court or regulatory orders, settlements, or judgments.

| Computer systems | means: |

1. computers and related peripheral components, including Internet of Things (IoT) devices;
2. systems and applications software;
3. terminal devices;
4. related communications networks;
5. mobile devices (handheld and other wireless computing devices); and
6. storage and back-up devices

by which electronic data is collected, transmitted, processed, stored, backed up, retrieved, and operated by **you** on **your** own behalf. **Computer systems** includes items 1. to 6. above that are operated by a third party vendor, but only for providing hosted computer application services to **you** pursuant to a written contract.

| Continuity date | means the date specified in Item 10. of the Declarations. Provided, if a **subsidiary** is acquired during the **policy period**, the **continuity date** for such **subsidiary** will be the date the **named insured** acquired such **subsidiary**. |

 Coalition

| | |
|---|---|
| Crisis management costs | means the following reasonable fees or expenses agreed to in advance by **us**, in **our** discretion to mitigate covered **damages** or **loss** due to a **public relations event**: |

1. a public relations or crisis management consultant;
2. media purchasing, or for printing or mailing materials intended to inform the general public about the **public relations event**;
3. providing notifications to individuals where such notifications are not required by **breach notice law**, including notices to **your** non-affected customers, employees, or clients; and
4. other costs approved in advance by **us**.

| | |
|---|---|
| Cyber extortion | means any threat made by an individual or organization against **you** expressing the intent to: |

1. transfer, pay, or deliver any funds or property belonging to **you**, or held by **you** on behalf of others, using a **computer system** without **your** permission, authorization, or consent;
2. access, acquire, sell, or disclose non-public information in **your** care, custody, or control, provided such information is stored in an electronic medium in a **computer system** and is retrievable in a perceivable form;
3. alter, damage, or destroy any computer program, software, or other electronic data that is stored within a **computer system**;
4. maliciously or fraudulently introduce **malicious code** or **ransomware** into a **computer system**; or
5. initiate a **denial of service attack** on a **computer system**;

where such threat is made for the purpose of demanding payment of money, securities, Bitcoin, or other virtual currencies from **you**.

| | |
|---|---|
| Cyber extortion expenses | means the following reasonable and necessary costs incurred with **our** prior written consent: |

1. money, securities, Bitcoin, or other virtual currencies paid at the direction and demand of any person committing **cyber extortion** and costs incurred solely in, and directly from, the process of making or attempting to make such a payment; and
2. reasonable and necessary costs, fees, and expenses to respond to a **cyber extortion**.

The value of **cyber extortion expenses** will be determined as of the date such **cyber extortion expenses** are paid.

| | |
|---|---|
| Cyber terrorism | means the premeditated use, or threatened use, of disruptive activities against **computer systems** by any person, group, or organization, committed with the intention to harm or intimidate **you** to further social, ideological, religious, or political objectives. However, **cyber terrorism** does not include any activity which is part of or in support of any military action, war, or war-like operation. |

 Coalition

| | |
|---|---|
| Damages | means a monetary judgment, award that **you** are legally obligated to pay, or settlement agreed to by **you** and **us**. **Damages** does not mean the following: |

1. future profits, restitution, disgorgement of profits, or unjust enrichment, or the costs of complying with orders granting injunctive or equitable relief;
2. return or offset of fees, charges, or commissions charged by or owed to **you** for goods or services already provided or contracted to be provided;
3. civil or criminal fines or penalties, civil or criminal sanctions, liquidated damages, payroll or other taxes, or loss of tax benefits, or amounts or relief uninsurable under applicable law;
4. any damages which are a multiple of compensatory damages, or punitive or exemplary damages, unless insurable by law in any applicable jurisdiction that most favors coverage for such punitive or exemplary damages;
5. discounts, coupons, prizes, awards, or other incentives offered by **you**;
6. fines, costs, assessments, or other amounts **you** are responsible to pay under a **merchant services agreement**; or
7. any amounts for which **you** are not liable, or for which there is no legal recourse against **you**.

| | |
|---|---|
| Data breach | means the acquisition, access, theft, or disclosure of **personally identifiable information** by a person or entity, or in a manner, that is unauthorized by **you**. |
| Denial of service attack | means a deliberate or malicious attack that makes a **computer system** unavailable to its intended users by temporarily or indefinitely disrupting services of a host that **you** use. |
| Digital asset | means any of **your** electronic data or computer software. **Digital assets** do not include computer hardware of any kind. |
| Employee | means any past, present, or future: |

1. person employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary employee, or any volunteer; and
2. **senior executive**;

but only while acting on behalf of the **named insured** or **subsidiary** and in the scope of the business operations of the **named insured** or **subsidiary**.

 Coalition

| | |
|---|---|
| Extra expenses | means **your** reasonable and necessary extra expenses incurred to avoid or minimize a **business interruption loss**, including: |

1. the reasonable and necessary additional costs of sourcing **your** products or services from alternative sources in order to meet contractual obligations to supply **your** customers and clients;
2. the reasonable and necessary additional costs of employing contract staff or overtime costs for **employees**, including **your** internal IT department, in order to continue **your** business operations which would otherwise have been handled in whole or in part by the **computer systems** or **service provider**; and
3. the reasonable and necessary additional costs of employing specialist consultants, including IT forensic consultants, in order to diagnose and fix the **security failure** or **systems failure**.

Provided, however, that such expenses do not exceed the amount of loss that otherwise would have been payable as **business interruption loss**.

**Extra expenses** does not mean and will not include costs for better computer systems or services than **you** had before the **security failure** or **systems failure**, including upgrades, enhancements, and improvements. However, this shall not apply if the cost for the most current version of a computer system is substantially equivalent to (or less than) the original cost of the **computer system you** had before the **security failure** or **systems failure** took place.

| | |
|---|---|
| Funds transfer fraud | means a fraudulent instruction transmitted by electronic means, including through social engineering, to **you** or **your** financial institution directing **you**, or the financial institution, to debit an account of the **named insured** or **subsidiary** and to transfer, pay, or deliver money or securities from such account, which instruction purports to have been transmitted by an **insured** and impersonates **you** or **your** vendors, business partners, or clients, but was transmitted by someone other than **you**, and without **your** knowledge or consent. The financial institution does not include any such entity, institution, or organization that is an **insured**. |

| | |
|---|---|
| Funds transfer loss | means: |

1. loss of money or securities directly resulting from **funds transfer fraud**; and
2. reasonable and necessary costs, fees, and expenses to respond to **funds transfer fraud**.

**Funds transfer loss** does not mean and will not include the loss of personal money or securities of **your employees**.

 Coalition

| | |
|---|---|
| Incident | means **cyber extortion**, **data breach**, **funds transfer fraud**, **public relations event**, **security failure**, or **systems failure**.<br><br>All **incidents** that have a common nexus of fact, circumstance, situation, event, transaction, or cause, or series of related facts, circumstances, situations, events, transactions, or causes will be considered a single **incident** occurring on the date the first such **incident** occurred. |
| Indemnity period | means the time period that:<br><br>1. begins on the date and time that the partial or complete interruption of **computer systems** first occurred; and<br>2. ends on the earlier of the date and time that the interruption to **your** business operations resulting from such interruption of **computer systems**: (i) ends; or (ii) could have ended if **you** had acted with due diligence and dispatch.<br><br>However, in no event shall the **indemnity period** exceed 180 days. |
| Insured, you, or your | means the **named insured**, a **subsidiary**, **senior executives**, and **employees**. |
| Loss | means **breach response costs**, **business interruption loss**, **crisis management costs**, **cyber extortion expenses**, **extra expenses**, **funds transfer loss**, and **restoration costs**. |
| Malicious code | means any software program, code, or script specifically designed to create system vulnerabilities and destroy, alter, steal, contaminate, or degrade the integrity, quality, or performance of:<br><br>1. electronic data used or stored in any computer system or network; or<br>2. a computer network, any computer application software, or computer operating system or related network. |
| Media content | means any data, text, sounds, numbers, images, graphics, videos, streaming content, webcasts, podcasts, or blogs but does not mean computer software or the actual goods, products, or services described, referenced, illustrated, or displayed in such **media content**. |
| Merchant service agreement | means any agreement between the **you** and a financial institution, payment card company, payment card processor, or independent service operator, that enables **you** to accept credit cards, debit cards, prepaid cards, or other payment cards for payments or donations. |

 Coalition

| | |
|---|---|
| Multimedia wrongful act | means any of the following actually or allegedly committed by **you** in the ordinary course of **your** business in gathering, communicating, reproducing, publishing, disseminating, displaying, releasing, transmitting, or disclosing **media content**, including social media authorized by **you**: |

1. defamation, libel, slander, trade libel, infliction of emotional distress, outrage, outrageous conduct, or other tort related to disparagement or harm to the reputation or character of any person or organization;
2. violation of the rights of privacy of an individual, including false light and public disclosure of private facts;
3. invasion or interference with an individual's right of publicity, including commercial appropriation of name, persona, voice, or likeness;
4. plagiarism, piracy, or misappropriation of ideas under implied contract;
5. infringement of copyright, domain name, trademark, trade name, trade dress, logo, title, metatag, slogan, service mark, or service name; or
6. improper deep-linking or framing within electronic content.

| | |
|---|---|
| Named insured | means the individual, partnership, entity, or corporation designated as such in Item 1. of the Declarations, or by endorsement to this Policy. |
| PCI fines and assessments | means the direct monetary fines and assessments for fraud recovery, operational expenses including card reissuance fees and notification of cardholders, and case management fees owed by **you** under the terms of a **merchant services agreement**, but only where such fines or assessments result from a **security failure**. **PCI fines and assessments** will not include any charge backs, interchange fees, discount fees, or other services related fees, rates, or charges. |
| Personally identifiable information | means any information about an individual that is required by any local, state, federal, or foreign law or regulation to be protected from unauthorized access, acquisition, or public disclosure. |
| Policy period | means the period of time between the inception date shown in the Declarations and the effective date of termination, expiration, or cancellation of this Policy and specifically excludes any Optional Extended Reporting Period. |

 Coalition

| | |
|---|---|
| Pollutants | means any solid, liquid, gaseous, or thermal irritant or contaminant exhibiting hazardous characteristics as is or may be identified on any list of hazardous substance issued by the United States Environmental Protection Agency, or any state, local, or foreign counterpart, including gas, acids, alkalis, chemicals, odors, noise, lead, petroleum or petroleum-containing products, heat, smoke, vapor, soot, fumes, radiation, asbestos or asbestos-containing products, waste (including material to be recycled, reconditioned, or reclaimed), electric, magnetic, or electromagnetic field of any frequency, as well as any air emission, wastewater, sewage, infectious medical waste, nuclear materials, nuclear waste, mold, mildew, fungus, bacterial matter, mycotoxins, spores, scents or by-products and any non-fungal micro-organism, or non-fungal colony form organism that causes infection or disease. |

Privacy liability        means:

1. **your** actual or alleged failure to timely disclose a **security failure** or **data breach** resulting in a violation of any **breach notice law**;
2. **your** failure to comply with those provisions in **your privacy policy** that:
   a. mandate procedures to prevent the loss of **personally identifiable information**;
   b. prohibit or restrict disclosure, sharing, or selling of an individual's **personally identifiable information**; or
   c. require **you** to give access to **personally identifiable information** or to amend or change **personally identifiable information** after a request is made by the concerning individual;

   provided that no **senior executive** knew of or had reason to know of any such conduct; or
3. **your** failure to administer an identity theft prevention program or an information disposal program pursuant to 15 U.S.C. 1681, as amended, or any similar state or federal law.

| | |
|---|---|
| Privacy policy | means any public written statements that set forth **your** policies, standards, and procedures for the collection, use, disclosure, sharing, dissemination, and correction or supplementation of, and access to, **personally identifiable information.** |

Public relations event        means:

1. the publication or imminent publication in a newspaper (or other general circulation print publication), on radio or television, or electronic news website (but not including social media) of a covered **claim** under this Policy; or
2. a **security failure** or **data breach** that results in covered **breach response costs** under this Policy or which reasonably may result in a covered **claim** under the Policy.

 Coalition

| | |
|---|---|
| Ransomware | means any **malicious code** designated to block **your** access to **computer systems** or **digital assets**, delete or otherwise harm the **computer system** or **digital assets**, or cause a **security failure**, until a sum of money is paid. |
| Regulatory penalties | means monetary fines and penalties imposed in a **regulatory proceeding** to the extent insurable under applicable law. |

**Regulatory penalties** will not mean any:

1. costs to comply with injunctive relief;
2. costs to establish or improve privacy or security practices; or
3. audit, reporting, or compliance costs.

| | |
|---|---|
| Regulatory proceeding | means a request for information, civil investigative demand, or civil proceeding commenced by service of a complaint or similar proceeding brought by or on behalf of the Federal Trade Commission, Federal Communications Commission, or any federal, state, local, or foreign governmental entity in such entity's regulatory or official capacity in connection with such proceeding. |

**Regulatory proceeding** does not include the Security and Exchange Commission (SEC) and similar federal, state, local, or foreign governmental entity.

| | |
|---|---|
| Restoration costs | means the reasonable and necessary costs **you** incur to replace, restore, or recreate **digital assets** to the level or condition at which they existed prior to a **security failure**. If such **digital assets** cannot be replaced, restored, or recreated, then **restoration costs** will be limited to the actual, reasonable, and necessary costs **you** incur to reach this determination. **Restoration costs** do not include: |

1. any costs or expenses incurred to update, upgrade, replace, restore, repair, recall, or otherwise improve the **digital assets** to a level beyond that which existed prior to the **security failure**;
2. any costs or expenses incurred to identify, remove, or remediate computer program errors or vulnerabilities, or costs to update, upgrade, replace, restore, maintain, or otherwise improve any **computer system**; or
3. the economic or market value of any **digital assets**, including trade secrets, or the costs to re-perform any work product contained within any **digital assets**.

**Restoration costs** does not mean and will not include costs for better computer systems or services than **you** had before the **security failure**, including upgrades, enhancements, and improvements. However, this shall not apply if the cost for the most current version of a computer system is substantially equivalent to (or less than) the original cost of the **computer system you** had before the **security failure** took place.

| | |
|---|---|
| Retroactive date | means the date specified in Item 9. of the Declarations. |



| | |
|---|---|
| Security failure | means the failure of security of **computer systems** which results in: |

1. acquisition, access, theft, or disclosure of **personally identifiable information** or **third party corporate information** in **your** care, custody, or control and for which **you** are legally liable;
2. loss, alteration, corruption, or damage to software, applications, or electronic data existing in **computer systems**;
3. transmission of **malicious code** from **computer systems** to third party computer systems that are not owned, operated, or controlled by the **named insured** or **subsidiary**; or
4. a **denial of service attack** on the **named insured's** or **subsidiary's computer systems**; or
5. access to or use of **computer systems** in a manner that is not authorized by **you**, including when resulting from the theft of a password.

**Security failure** does not mean and will not include any failure of computers, related peripheral components, or mobile devices that are owned or leased by an **employee** and not used for the business operations of the **named insured** or **subsidiary**.

| | |
|---|---|
| Senior executive | means any partner, principal, director, executive board member, in-house counsel, risk manager, chief information officer, chief information security officer, chief privacy officer, chief financial officer, chief executive officer, chief operating officer, or functional equivalent, but only while acting on **your** behalf in the scope of **your** business operations. |
| Service provider | means any third party that is responsible for the processing, maintenance, protection, or storage of **digital assets** pursuant to a written contract. |



| | |
|---|---|
| Subsidiary | means any organization in which the **named insured**: |

1. owns either directly or indirectly 50% or more of the outstanding voting stock; or
2. has recognized the revenues in the **application**.

An organization ceases to be a **subsidiary** on the date, during the **policy period**, that the **named insured's** ownership, either directly or indirectly, ceases to be 50% of the outstanding voting stock.

The **named insured** will give written notice to **us** of any acquisition or creation of an organization with ownership interest greater than 50%, no later than sixty (60) days after the effective date of such acquisition or creation. Automatic coverage of such organization is granted until the end of the **policy period** or for 90 days, whichever is the earlier, subject to the following criteria:

1. the newly created or acquired **subsidiary** has substantially similar business operations;
2. the new **subsidiary's** gross revenue is equal to or less than 10% of the total gross revenue the **named insured** has listed on the **application**; and
3. prior to the effective date of such acquisition or creation, no **senior executive** of the **named insured** or of the acquired or created organization, knew or could have reasonably expected that a **claim** would be made or coverage triggered under any Insuring Agreement in Section II, WHAT WE COVER.

Upon receipt of such acquisition or creation, **we** may, at **our** sole option, agree to appropriately endorse this Policy subject to additional premium and/or change terms and conditions. If the **named insured** does not agree to the additional premium and/or changed terms and conditions, if any, coverage otherwise afforded under this provision for such acquired or created organization will terminate ninety (90) days after the effective date of such acquisition or creation, or at the end of the **policy period**, whichever is the earlier.



| Systems failure | means any: |
|---|---|

1. unintentional, unplanned, or unexpected **computer system** disruption, damage, or failure where the proximate cause is not a **security failure**, loss of or damage to any physical equipment or property, or planned or scheduled outage or maintenance of **computer systems** or a third party's computer systems (including downtime that is the result of a planned outage lasting longer than initially expected); or
2. disruption of **computer systems** by **you**, with **our** written prior consent, in order to mitigate covered **loss** under this Policy.

**Systems failure** does not include any:

1. failure of a third party technology or cloud service provider that results in an outage that extends beyond **your computer systems**;
2. failure or termination of any core element of internet, telecommunications, or GPS infrastructure that results in a regional, countrywide, or global outage of such infrastructure;
3. suspension, cancellation, revocation, or failure to renew any domain names or uniform resource locators;
4. failure of power supply and other utilities unless the provision of power and other utility services is under the **named insured's** direct control;
5. failure to adequately anticipate or capacity plan for normal and above operational demand for **computer systems** except where this demand is a **denial of service attack**;
6. government shutdown of systems or services;
7. ordinary wear and tear or gradual deterioration of the physical components of **computer systems**; or
8. failure or defect in the design, architecture, or configuration of **computer systems**.

| Third party corporate information | means any information of a third party held by **you** which is not available to the general public and is provided to **you** subject to a mutually executed written confidentiality agreement between **you** and the third party or which you are legally required to maintain in confidence. However, **third party corporate information** does not include **personally identifiable information**. |
|---|---|
| Waiting period | means the number of hours set forth in Item 5. of the Declarations |
| We, us, or our | means the Company providing this Policy. |

## SECTION X

## OTHER PROVISIONS

 Coalition

| | |
|---|---|
| OTHER INSURANCE | This Policy will apply excess of any other valid and collectible insurance available to **you**, including the self-insured retention or deductible portion of that insurance, unless such is written only as specific excess insurance to this Policy, without contribution by this Policy. |
| CHOICE OF LAW | Any disputes involving this Policy will be resolved applying the law designated in Item 12. of the Declarations, without reference to that jurisdiction's choice of law principles. |
| NO ASSIGNMENT | No change in, modification of, or assignment of interest under this Policy will be effective except when made by written endorsement signed by **us**. |
| NOTICE OF TERRORISM INSURANCE COVERAGE | Coverage for acts of terrorism is included in **your** Policy. **You** are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under **your** coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, **your** Policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, **your** coverage may be reduced.<br><br>The portion of **your** annual premium that is attributable to coverage for acts of terrorism is 0.20%, and does not include any charges for the portion of losses covered by the United States government under the Act. |

 Coalition

Last updated: September 5, 2019

# Notice of Available Panel Providers

Coalition policyholders may engage the following Panel Providers upon written notice of a claim or incident. Notice of a claim or incident can be provided to claims@thecoalition.com, at 1.833.866.1337, or through the report a claim button at www.thecoalition.com/claims. Panel Providers available to Coalition policyholders are subject to change. The current list is available at www.thecoalition.com/panel.

| | |
|---|---|
| Data Breach response – U.S. (recommended attorney in brackets) | Mendes & Mount (Peggy Reetz) <br> Lewis Brisbois (Sean Hoar) <br> Mullen Coughlin (Jennifer Coughlin) |
| Data Breach response – E.U. (recommended attorney in brackets) | Pinsent Mason (Ian Birdsey) |
| Litigation | Lewis Brisbois <br> Winget Spadafora & Schwartzberg <br> Dentons <br> BakerHostetler |
| Media Claims | Leopold Petrick & Smith (Louis Petrich) <br> Lewis Brisbois (Elior Shiloh) <br> Duane Morris (Cynthia Counts) |
| Notification | Epiq <br> Experian |
| Forensics / Incident Response | Coalition Incident Response <br> Kivu Consulting <br> Crypsis <br> Mandiant <br> Charles River Associates |
| PR & Crisis Management | Infinite Global <br> Edelman <br> APCO Worldwide |
| Forensic Accounting | Baker Tilly (formerly RGL) |
| DDoS Mitigation providers | Cloudflare (cloudflare.com) <br> Incapsula (incapsula.com) <br> Google Project Shield (projectshield.withgoogle.com) <br> Akamai (akamai.com) <br> Fastly (fastly.com) |

 Coalition

Last updated: September 5, 2019

Coalition policyholders may engage with the following additional vendors with our prior written approval. Coalition policyholders may also engage vendors not listed with our prior written approval.

| Notification | AllClear ID |
| --- | --- |
| Forensics/Incident Response | CrowdStrike |

 Coalition

**MASTER POLICY NO.:**   C-4M0A-226772-CYBER-2020
**ENDT. NO.:**                    01

## QUOTA SHARE ENDORSEMENT

| Form Number | SP 15 629 0218 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

This Policy is issued on a quota share basis. Each insurer will be responsible for payment of a certain percentage share of the Limits of Liability as specified in the Declarations for this Policy as follows:

Quota Share Percentage of each insurer:
North American Capacity Insurance Company 51.0%
Peleus Insurance Company 49.0%

Each quota share insurers' obligations to you under this Policy are several and not joint and are limited solely to the extent of their individual quota share percentage.  The quota share insurers are not responsible for the obligations of any quota share insurer who for any reason does not satisfy all or part of its obligations.  None of the quota share insurers has a duty to pay before any of the other quota share insurers. **Claim expenses** are part of and not in addition to the Limits of Liability.

Provided that:

1. The collective liability of the insurers shall not exceed the Aggregate Policy Limit of Liability as specified in Item 4. of the Declarations.
2. The Limit of Liability of each of the insurers individually shall be limited to the pro rata percentage of liability set opposite its name.

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**           **02**

### SERVICE OF SUIT ENDORSEMENT

| | |
|---|---|
| Form Number | SP 14 927 0219 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

It is understood and agreed that in the event **we** fail to pay any amount claimed to be due hereunder, **we**, at the request of the **named insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.  The foregoing shall not constitute a waiver of the right by **us** to remove, remand, or transfer such suit to any other court of competent jurisdiction in accordance with the applicable statutes of the state of United States pertinent hereto.  In any suit instituted against **us** upon this contract, **we** will abide by the final decision of such court or of any appellate court in the event of an appeal.

It is further agreed that service of process in such suit may be made upon the Superintendent, Commissioner, or Director of Insurance or other person specified for that purpose in the Statute or his successor or successors in office as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the **named insured** or any beneficiary hereunder arising out of this contract of insurance.

**We** hereby designate the President of North American Capacity Insurance Company, 1200 Main Street, Suite 800, Kansas City, MO 64105, as the person to who the said Superintendent, Commissioner, or Director of Insurance is authorized to mail such process or a true copy thereof, in compliance with the applicable statutes governing said service of process in the state or jurisdiction in which a cause of action under this contract of insurance arises.

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**            **03**

### BODILY INJURY AND PROPERTY DAMAGE ENDORSEMENT – 1ST PARTY

| Form Number | SP 14 799 1117 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COALITION CYBER POLICY

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|
| BI/PD1. BODILY INJURY AND PROPERTY DAMAGE – 1ST PARTY | $250,000 | $5,000 |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following Insuring Agreement:

| BI/PD1.     BODILY INJURY AND PROPERTY DAMAGE – 1ST PARTY | **We** will pay on **your** behalf **loss** that **you** incur for: |
|---|---|
| | 1. bodily injury, sickness, disease, or death of a person resulting directly from a **security failure**; |
| | 2. damage or injury to or destruction of tangible property resulting directly from a **security failure**; or |
| | 3. impairment to or loss of use of tangible property, whether physically damaged, injured, destroyed or not, including tangible property that cannot be accessed, used, or is less useful resulting directly from a **security failure**; |
| | provided such **security failure** is first discovered by **you** during the **policy period**. |

3. Paragraphs A. BODILY INJURY and T. TANGIBLE PROPERTY, under Section III, EXCLUSIONS – WHAT IS NOT COVERED, are deleted for purposes of the coverage provided under Insuring Agreement, BI/PD1. BODILY INJURY AND PROPERTY DAMAGE – 1ST PARTY only.



4. For purposes of the coverage provided under Insuring Agreement, BI/PD1. BODILY INJURY AND PROPERTY DAMAGE – 1ST PARTY only, the definition of "**Loss**" under Section IX, DEFINITIONS is deleted and replaced with the following:

| Loss | means **breach response costs, business interruption loss, crisis management costs, cyber extortion expenses,** and **extra expenses.** |
|------|------|

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   C-4M0A-226772-CYBER-2020
**ENDT. NO.:**   04

## BODILY INJURY AND PROPERTY DAMAGE ENDORSEMENT – 3RD PARTY

| | |
|---|---|
| Form Number | SP 14 800 0518 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. THIRD PARTY LIABILITY COVERAGES of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|
| BI/PD3. BODILY INJURY AND PROPERTY DAMAGE – 3RD PARTY | $250,000 | $5,000 |

2. Section II, THIRD PARTY LIABILITY COVERAGES is amended by the addition of the following Insuring Agreement:

| | |
|---|---|
| BI/PD3.   BODILY INJURY AND PROPERTY DAMAGE – 3RD PARTY | **We** will pay on **your** behalf **claim expenses, damages**, and **regulatory penalties** that **you** become legally obligated to pay resulting from a **claim** against **you** for: <br><br> 1. bodily injury, sickness, disease, or death of a person resulting directly from a **security failure**; <br><br> 2. damage or injury to or destruction of tangible property resulting directly from a **security failure**; or <br><br> 3. impairment to or loss of use of tangible property, whether physically damaged, injured, destroyed or not, including tangible property that cannot be accessed, used, or is less useful resulting directly from a **security failure**. |

3. Paragraphs A. BODILY INJURY and T. TANGIBLE PROPERTY, under Section III, EXCLUSIONS – WHAT IS NOT COVERED, are deleted for purposes of the coverage provided under Insuring Agreement, BI/PD3. BODILY INJURY AND PROPERTY DAMAGE – 3RD PARTY only.



4. For purposes of this Endorsement only, Section III, EXCLUSIONS – WHAT IS NOT COVERED, is amended by the addition of the following:

| MULTIMEDIA EXCLUSION | With respect to Section II, BI/PD3. BODILY INJURY AND PROPERTY DAMAGE – 3RD PARTY, any **claim** against **you** for a **multimedia wrongful act**.   However, this exclusion will not apply to any **claim** for mental anguish or emotional distress for a **multimedia wrongful act**. |
|---|---|

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   C-4M0A-226772-CYBER-2020
**ENDT. NO.:**   05

<u>**COMPUTER REPLACEMENT ENDORSEMENT**</u>

| | |
|---|---|
| Form Number | SP 17 514 0419 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by<br>(Name of Insurance Company) | North American Capacity Insurance Company,<br>Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|
| CR. COMPUTER REPLACEMENT | $500,000 | $5,000 |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following insuring agreement:

| | |
|---|---|
| CR. COMPUTER REPLACEMENT | We will pay on **your** behalf **computer replacement costs** that **you** incur as a result of the loss of integrity in the firmware of any **computer systems you** own or lease due to a **security failure** first discovered by **you** during the **policy period**. |

3. Section IX, DEFINITIONS is amended by the addition of the following definition:

| | |
|---|---|
| Computer replacement costs | means the reasonable and necessary costs **you** incur, with **our** prior written consent, to restore or replace those **computer systems** directly impacted by a **security failure**.<br><br>**Computer replacement costs** do not include **breach responses costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss,** or **restoration costs.** |



4. For purposes of the coverage provided under this Endorsement only, the definitions of "**Computer systems**" and "**Loss**" in Section IX, DEFINITIONS are deleted and replaced with the following:

| Computer systems | means: |
| --- | --- |
| | 1. computers and related peripheral components, including Internet of Things (IoT) devices; |
| | 2. systems and applications software; |
| | 3. terminal devices; |
| | 4. related communications networks; |
| | 5. mobile devices (handheld and other wireless computing devices); and |
| | 6. storage and back-up devices |
| | by which electronic data is collected, transmitted, processed, stored, backed up, retrieved, and which are owned by **you**. |
| Loss | means **breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs,** and **computer replacement costs**. |

5. Paragraph T. TANGIBLE PROPERTY, under Section III, EXCLUSIONS – WHAT IS NOT COVERED, is deleted for purposes of the coverage provided under Insuring Agreement, CR. COMPUTER REPLACEMENT.

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition˙

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**                **06**

### POLLUTION ENDORSEMENT

| Form Number | SP 14 801 0318 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

Paragraph O. POLLUTANTS, under Section III. WHAT IS NOT COVERED, is deleted for purposes of:

1. an otherwise covered **claim** under Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY only; and

2. **claim expenses** resulting from an otherwise covered **claim** under Section II.B, REGULATORY DEFENSE AND PENALTIES only.

Provided, however, that the amount of **claim expenses** and **damages** paid by **us** under this Endorsement that would otherwise be excluded from coverage by Paragraph O. will not exceed the sub-limit amount of $250,000, regardless of the number of **claims** or **insureds**. This sub-limit will be part of, and not in addition to, the Limits of Liability for Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY and Section II.B. REGULATORY DEFENSE AND PENALTIES, and the Aggregate Limit of Liability.

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition®

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**        **07**

### REPUTATION REPAIR ENDORSEMENT

| Form Number | SP 14 802 1117 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by
(Name of Insurance Company) | North American Capacity Insurance Company,
Peleus Insurance Company |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COALITION CYBER POLICY

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

The definition of "**Crisis management costs**" under Section IX, DEFINITIONS is deleted and replaced with the following:

| Crisis management costs | means the following reasonable fees or expenses agreed to in advance by **us**, in **our** discretion (such agreement not to be unreasonably withheld) to mitigate harm to **your** reputation or to a covered **loss** due to a **public relations event**: |
|---|---|
| | 1. a public relations or crisis management consultant;
2. media purchasing or for printing or mailing materials intended to inform the general public about the **public relations event**;
3. providing notifications to individuals where such notifications are not required by **breach notice law**, including notices to **your** non-affected customers, employees, or clients;
4. other costs approved in advance by **us**;

Provided that any **crisis management costs** to mitigate harm to **your** reputation must be incurred within twelve months after the first publication of such **public relations event**. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition˙

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**              **08**

<u>**REPUTATIONAL HARM LOSS ENDORSEMENT**</u>

| | |
|---|---|
| Form Number | SP 16 383 0718 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by<br>(Name of Insurance Company) | North American Capacity Insurance Company,<br>Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. of the Declarations is amended to include the following:

| **Insuring Agreement** | **Limit/Sublimit** | **Retention** |
|---|---|---|
| RHL. REPUTATIONAL HARM LOSS | $1,000,000 | Waiting period: 14 days |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following Insuring Agreement:

| **REPUTATIONAL HARM LOSS** | **We** will pay **reputational harm loss** that **you** incur during the **indemnity period** solely and directly resulting from an **adverse publication** first published during the **policy period** specifically concerning a **security failure, data breach**, or **cyber extortion** first discovered by **you** and reported to **us** during the **policy period**.<br><br>The **waiting period** for any **reputational harm loss** will be the period of time set forth in Item 5. above. |
|---|---|

3. For purposes of the coverage provided under Insuring Agreement, RHL. REPUTATIONAL HARM LOSS only, Section IV, YOUR OBLIGATIONS AS AN INSURED, WHEN THERE IS A **CLAIM** OR **INCIDENT** is amended to include the following:

   Notice of any **adverse publication** will include complete details of the **adverse publication** and the date **you** first became aware of such **adverse publication**, **you** must immediately record the specifics of any **reputational harm loss** resulting therefrom.



4. For purposes of the coverage provided under Insuring Agreement, RHL. REPUTATIONAL HARM LOSS only, SECTION V, CLAIMS PROCESS, PROOF OF LOSS is deleted and replaced with the following:

| PROOF OF LOSS | With respect to **reputational harm loss, you** must complete and sign written, detailed, and affirmed proof of loss within 90 days after the **adverse publication** (unless such period has been extended by the underwriters in writing) which will include, at a minimum, the following information: |
| --- | --- |
| | (a) a full description of the circumstances, including, without limitation, the time and place of the **adverse publication**; |
| | (b) a full description of the circumstances, including, without limitation, the time, place, and cause of the underlying **security failure**, **data breach**, or **cyber extortion** as well as the date of first notice to **us**; and |
| | (c) a detailed calculation of any **reputational harm loss**; and all underlying documents and materials that reasonably relate to or form part of the basis of the proof of such **reputational harm loss**. |
| | Any costs incurred by **you** in connection with establishing or proving **reputational harm loss**, including preparing a proof of loss, will be **your** obligation and is not covered under this Policy. |
| | Solely with respect to verification of **reputational harm loss**, **you** agree to allow **us** to examine and audit **your** books and records that relate to this Policy at any time during the **policy period** and up to 12 months following a **loss**. |

5. For purposes of the coverage provided under Insuring Agreement, RHL. REPUTATIONAL HARM LOSS only, Section IX, DEFINITIONS is amended by the addition of the following:

| Adverse publication | means any report or communication to the public through any media channel including, but not limited to television, print media, radio, the internet, or electronic mail, of information that was previously unavailable to the public, specifically concerning a **security failure**, **data breach**, or **cyber extortion** that affects any of **your** customers or clients. All **adverse publications** relating to the same **security failure**, **data breach** or **cyber extortion** will be deemed to have occurred on the date of the first **adverse publication** for the purposes of determining the applicable **waiting period** and **indemnity period**. |
| --- | --- |

 Coalition®

| Reputational harm loss | means the net profit that would have been earned before income taxes, or net loss that would not have been incurred solely and directly as the result of any **adverse publication**.

**Reputational harm loss** does not include any:

(a) costs to rehabilitate **your** reputation, including legal costs or expenses;

(b) **breach response costs**;

(c) **crisis management costs**;

(d) costs directly caused by an **adverse publication** of any occurrence other than a covered **security failure**, **data breach**, or **cyber extortion**.

(e) **loss** arising out of, based upon, or attributable to any publicity that refers or relates to the security or privacy of other entities in the same or similar business or industry as **you**, including any of **your** competitors; or

(f) any **loss** resulting from partial or complete interruption of **computer systems** caused by a **security failure**.

**Reputational harm loss** will not include net profit that would likely have been earned before income taxes as a result of an increase in volume due to favorable business conditions caused by the impact of security failures, data breaches, or cyber extortion impacting other businesses, loss of market, or any other consequential loss. Further, due consideration shall be given to the following when **calculating reputational harm loss**:

(a) the experience of **your** business before the **adverse publication** and probable experience thereafter during the **indemnity period** had there been no **adverse publication** and to the continuation of normal charges and expenses that would have existed has no **adverse publication** occurred; and

(b) any **reputational harm loss** made up during, or within a reasonable time after the end of, the **indemnity period**. |
|---|---|

6. For purposes of the coverage provided under Insuring Agreement, RHL. REPUTATIONAL HARM LOSS only, the definitions of **"Indemnity period"**, **"Incident"** **"Loss"**, and **"Waiting period"** under Section IX, DEFINITIONS are deleted and replaced with the following:

| Indemnity period | means the one hundred and eighty (180) day period that begins at the conclusion of the **waiting period**. |
|---|---|
| Incident | means **cyber extortion, data breach, funds transfer fraud, public relations event, security failure, systems failure** or **adverse publication**. |



| Loss | means **breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs**, and **reputational harm loss**. |
|---|---|
| Waiting period | means the amount of time set forth in Item 5.  above that must elapse after the date upon which the **adverse publication** was first disseminated. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition˙

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**               **09**

### SERVICE FRAUD ENDORSEMENT

| Form Number | SP 16 183 0518 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by<br>(Name of Insurance Company) | North American Capacity Insurance Company,<br>Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. FIRST PARTY COVERAGES of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|
| SF. SERVICE FRAUD | $100,000 | $5,000 |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following insuring agreement:

| SF. SERVICE FRAUD | **We** we will reimburse **you** for direct financial loss that **you** incur as the result of **you** being charged for the fraudulent use of **business services** resulting from a **security failure**, provided that such direct financial loss is first discovered by **you** and incurred by **you** during the **policy period**. |
|---|---|

3. For purposes of the coverage provided under Insuring Agreement, SF. Service Fraud only, the following definition under Section IX, DEFINITIONS is added:

| Business services | means the information technology and telephony **business services** shown in the Schedule below provided that: |
|---|---|
| | (a) **you** use such service regularly in the normal course of **your** business; |
| | (b) **you** are charged a fee on a regular periodic basis, no less frequently than on a semi-annual basis; and |
| | (c) such services are provided in accordance with the terms and conditions of a written contract between **you** and the business service provider. |
| | Schedule |
| | Software as a Service;<br>Platform as a Service;<br>Network as a Service;<br>Infrastructure as a Service;<br>Voice over Internet Protocol; and<br>Telephony Services. |



All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**            **10**

### BREACH RESPONSE SEPARATE LIMIT ENDORSEMENT

| | |
|---|---|
| Form Number | SP 16 296 0618 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 4. of the Declarations is amended to include the following:
   **BREACH RESPONSE LIMIT OF LIABILITY**          **$2,000,000**

2. Section VI, LIMITS OF LIABILITY AND RETENTION, LIMITS OF LIABILITY is deleted and replaced by the following:

| LIMITS OF LIABILITY | Aggregate Limit of Liability & Limits of Liability for All Amounts Other than Breach Response Costs |
|---|---|
| | The Aggregate Limit of Liability set forth in Item 4. of the Declarations is the maximum amount **we** will be liable to pay for all **damages, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs, PCI fines and assessments, regulatory penalties** and **claim expenses**, regardless of the number of **claims, incidents,** or **insureds**. |
| | The Limits of Liability set forth in Item 5. of the Declarations is the maximum amount **we** will be liable to pay for all **damages, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs, PCI fines and assessments, regulatory penalties** and **claim expenses** under each Insuring Agreement, regardless of the number of **claims, incidents,** or **insureds**. Such Limits of Liability are part of, and not in addition to, the Aggregate Limit of Liability. The reference to applicable Limits of Liability herein refers to each participating Insurer's individual Quota Share Limit of Liability as stated in Item 7. of the Declarations. |



|  | **Our** Limits of Liability for an Optional Extended Reporting Period, if applicable, will be part of, and not in addition to the Aggregate Limit of Liability set forth in Item 4. of the Declarations. Limit of Liability for Breach Response Costs The Breach Response Limit of Liability set forth in Item 4. of the Declarations is the maximum amount **we** will be liable to pay for all **breach response costs**, regardless of the number of **security failures, data breaches**, or **insureds**. The Breach Response Limit of Liability is in addition to the Aggregate Limit of Liability. Upon exhaustion of the Breach Response Limit of Liability, there will be no further coverage under this Policy for any **breach response costs**. |
|---|---|

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**                **11**

### INVOICE MANIPULATION ENDORSEMENT

| | |
|---|---|
| Form Number | SP 17 813 0819 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. of the Declarations is amended to include the following:

| Insuring Agreement | Limit / Sublimit | Retention |
|---|---|---|
| IM. INVOICE MANIPULATION | $250,000 | $5,000 |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following insuring agreement:

| IM. INVOICE MANIPULATION | **We** will pay **you invoice manipulation loss** that **you** incur directly resulting from any **invoice manipulation** first discovered by **you** during the **policy period**. |
|---|---|

3. Section IX, DEFINITIONS is amended by the addition of the following definitions:

| Invoice Manipulation | means the release or distribution of any fraudulent invoice or payment instruction to a third party as a direct result of a **security failure**. |
|---|---|
| Invoice Manipulation Loss | means **your** direct net costs, excluding any profit, to provide goods, products, or services to a third party for which **you** are unable to collect payment after transfer of such goods, products, or services to a third party as a direct result of an **invoice manipulation**. |

4. For purposes of the coverage provided under this Endorsement only, the following definitions under Section IX, DEFINITIONS is deleted and replaced with the following:



| Incident | means **cyber extortion, data breach, funds transfer fraud, invoice manipulation, public relations event, security failure,** or **systems failure.**<br><br>All **incidents** that have a common nexus of fact, circumstance, situation, event, transaction, or cause, or series of related facts, circumstances, situations, events, transactions, or causes will be considered a single **incident** occurring on the date the first such **incident** occurred. |
|---|---|
| Loss | means **breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, invoice manipulation loss,** and **restoration costs.** |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   C-4M0A-226772-CYBER-2020
**ENDT. NO.:**           12

### MISCELLANEOUS AMENDMENTS (CRC INSURANCE SERVICES) ENDORSEMENT

| Form Number | SP 16 857 0119 |
|---|---|
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention |
|---|---|---|
| CR. CRIMINAL REWARD COVERAGE | $25,000 | $0 |

2. SECTION II, FIRST PARTY COVERAGES is amended by the addition of the following Insuring Agreement:

| CR. CRIMINAL REWARD COVERAGE | **We** will indemnify the **named insured**, in **our** discretion, **criminal reward costs**. No Retention will apply to this insuring agreement. |
|---|---|

3. Section II, FIRST PARTY COVERAGES, I. DIGITAL ASSET RESTORATION is deleted and replaced with the following:

| **I. DIGITAL ASSET RESTORATION** | **We** will pay on **your** behalf **restoration costs** that **you** incur because of the alteration, destruction, damage, theft, loss, or inability to access digital **assets directly** resulting from a **security failure** or **systems failure** first discovered by **you** during the **policy period**. |
|---|---|

4. SECTION III, EXCLUSIONS – WHAT IS NOT COVERED, Paragraph J. INSURED VERSUS INSURED is deleted and replaced with the following:

 Coalition®

| J. INSURED VERSUS INSURED | Any **claim** made by or on behalf of:<br><br>1. an **insured** under this Policy; however, this exclusion will not apply to an otherwise covered **claim** made by an **employee** arising from a **security failure** or **data breach** or a **claim** made by an additional insured;<br><br>2. any business enterprise in which **you** have greater than a twenty percent (20%) ownership interest; or<br><br>3. any parent company or other entity that owns more than twenty percent (20%) of an **insured**. |
|---|---|
| K. INTELLECTUAL PROPERTY | Violation or infringement of any intellectual property right or obligation, including:<br><br>1. infringement of copyright of software, firmware, or hardware;<br><br>2. misappropriation, misuse, infringement, or violation of any patent or trade secret;<br><br>3. distribution or sale of, or offer to distribute to sell, any goods, products, or services; or<br><br>4. other use of any goods, products, or services that infringes or violates any intellectual property law or right relating to the appearance, design, or function of any goods, products, or services;<br><br>however, this exclusion will not apply to:<br><br>1. an otherwise covered **claim** arising from the acquisition, access, theft, or disclosure of a trade secret that qualifies as **third party corporate information** resulting from a **security failure**; or<br><br>2. Section II.C, MULTIMEDIA CONTENT LIABILITY, for an otherwise covered **claim** for a **multimedia wrongful act**, provided that, this exception to exclusion K. INTELLECTUAL PROPERTY shall not apply to any violation or infringement of any intellectual property right or obligation described in items 1. and 2. above. |

5. SECTION IV, YOUR OBLIGATIONS AS AN INSURED, OBLIGATION TO PRESERVE OUR RIGHT OF SUBROGATION is deleted and replaced with the following:

| OBLIGATION TO PRESERVE OUR RIGHT OF SUBROGATION | In the event of any payment by **us** under this Policy, **we** will be subrogated to all of **your** rights of recovery. **You** will do everything necessary to secure and preserve such subrogation rights, including the execution of any documents necessary to enable **us** to bring suit in **your** name. **You** will not do anything after an **incident** or event giving rise to a **claim** or **loss** to prejudice such subrogation rights without first obtaining **our** consent.<br><br>This obligation does not apply to the extent that the right to subrogate is waived by **you** under a written contract with that person or organization, prior to the **incident** or event giving rise to the **claim** or **loss**. |
|---|---|

 Coalition⁺

6. SECTION IV, YOUR OBLIGATIONS AS AN INSURED, WHEN THERE IS A **CLAIM** OR **INCIDENT** is deleted and replaced with the following:

| WHEN THERE IS A **CLAIM** OR **INCIDENT** | **You** must provide **us** written notice of a **claim** or **incident** through the persons named in Item 8. of the Declarations as soon as practicable once such **claim** or **incident** is known to a **senior executive**. In no event will such notice to **us** be later than: (i) the end of the **policy period**; (ii) or 90 days after the end of the **policy period** for **claims** made against **you** or incidents discovered by **you** in the last 60 days of the **policy period**. |
|---|---|

7. SECTION V, CLAIMS PROCESS, SETTLEMENT is deleted and replaced with the following:

| SETTLEMENT | If **you** refuse to consent to any settlement or compromise recommended by **us** and acceptable to the claimant, **our** liability for such **claim** will not exceed: |
|---|---|
| | 1. the amount for which such **claim** could have been settled, less the retention, plus **claim expenses** incurred up to the time of such refusal; and |
| | 2. eighty percent (80%) of **claim expenses** incurred after such settlement was refused by **you**, plus eighty percent (80%) of **damages** and **regulatory penalties** in excess of the amount such **claim** could have settled under such settlement. |
| | In this event, **we** will have the right to withdraw from the further defense of such **claim** or **regulatory proceeding** by tendering control of the defense thereof to **you**. The operation of this paragraph will be subject to the Limits of Liability and Retention provisions of this Policy. |

8. SECTION V, CLAIMS PROCESS, DEFENSE is amended to include the following:

| DEFENSE | If **we** request **your** presence at a trial, hearing, deposition, mediation, or arbitration relating to the defense of any claim, **we** will pay reasonable costs and expenses of attendance up to a maximum amount of $500.00 a day per person, subject to a maximum amount of $25,000 per **policy period**. Such amounts are part of and not in addition to the Limits of Liability of this Policy. |
|---|---|

9. SECTION VII, CANCELLATION AND OPTIONAL EXTENDED REPORTING PERIOD, OPTIONAL EXTENDED REPORTING PERIOD is deleted and replaced with the following:



| OPTIONAL EXTENDED REPORTING PERIOD | In the event of cancellation or non-renewal of this Policy, by either the **named insured** or **us**, for reasons other than fraud or material misrepresentation in the **application** for this Policy, or non-payment of premium or Retention, the **named insured** will have the right, upon payment in full of an additional premium, to purchase an Optional Extended Reporting Period under this Policy, subject to all terms, conditions, limitations of, and any endorsements to this Policy, for a period of either: |
|---|---|

a. one year for an additional premium of 100% of the total annual premium; or

b. two years for an additional premium of 150% of the total annual premium; or

c. three years for an additional premium of 200% of the total annual premium

following the effective date of such cancellation or non-renewal.

Such Optional Extended Reporting Period applies only to:

1. **claims** first made against you during the Optional Extended Reporting Period arising out of any act, error, or omission committed on or after the **retroactive date** and before the end of the **policy period**; and

2. **incidents**, **privacy liability**, or **multimedia wrongful acts** first discovered by you after the **retroactive date** and took place before the end of the **policy period**

subject to the Retention, Limits of Liability, exclusions, conditions, and other terms of this Policy. The offer of renewal terms, conditions, Limits of Liability, and/or premiums different from those of this Policy will not constitute a cancellation or refusal to renew.

The Optional Extended Reporting Period will terminate on the effective date and hour of any other insurance issued to the **named insured** or the **named insured's** successor that replaces in whole or in part the coverage afforded by the Optional Extended Reporting Period.

The **named insured's** rright to purchase the Optional Extended Reporting Period must be exercised in writing no later than ninety (90) days following the cancellation or non-renewal date of this Policy, and must include payment of premium for the applicable Optional Extended Reporting Period as well as payment of all premiums due to **us**. If such written notice is not given to **us**, the **named insured** will not, at a later date, be able to exercise such right.



|  | At the commencement of any Optional Extended Reporting Period, the entire premium thereafter will be deemed earned and in the event the **named insured** terminates the Optional Extended Reporting Period before its expiring date, **we** will not be liable to return any portion of the premium for the Optional Extended Reporting Period.<br><br>The fact that the time to report **claims** under this Policy may be extended by virtue of an Optional Extended Reporting Period will not in any way increase the Limits of Liability, and any amounts incurred during the Optional Extended Reporting Period will be part of, and not in addition to the Limits of Liability as stated in the Declarations.  The Optional Extended Reporting Period will be renewable at **our** sole option. |

10. The following definitions under Section IX, DEFINITIONS is deleted and replaced with the following:



| Breach response costs | means the following reasonable and necessary costs **you** incur with **our** prior written consent in response to an actual or suspected **security failure** or **data breach**: |
|---|---|
| | 1. computer forensic professional fees and expenses to determine the cause and extent of a **security failure**; |
| | 2. costs to notify individuals affected or reasonably believed to be affected by such **security failure** or **data breach**, including printing costs, publishing costs, postage expenses, call center costs, and costs of notification via phone or e-mail; |
| | 3. costs to provide government mandated public notices related to such **security failure** or **data breach**; |
| | 4. legal fees and expenses to advise **you** in connection with your investigation of a **security failure** or **data breach** and to determine whether **you** are legally obligated under a breach notice law to notify applicable regulatory agencies or individuals affected or reasonably believed to be affected by such **security failure** or **data breach**; |
| | 5. legal fees and expenses to advise **you** in complying with Payment Card Industry ("PCI") operating regulation requirements for responding to a **security failure** or **data breach** compromising payment card data, and the related requirements under a **merchant services agreement**, including a PCI forensic investigator when required under such agreement (this clause does not include any fees or expenses incurred in any legal proceeding, arbitration, or mediation, for any advice in complying with any PCI rules or regulations other than for assessment of **PCI fines and assessments** for a covered **security failure** or **data breach**, or to remediate the breached **computer systems**); and |
| | 6. costs to provide up to one year (or longer if required by law) of a credit or identity monitoring program, including credit freezing and credit thawing, to individuals affected by such **security failure** or **data breach**. |
| | **Breach response** costs must be incurred within one year of **your** discovery of an actual or suspected **security failure** or **data breach**. **You** have **our** prior consent to incur **breach response costs** in the form of computer forensic fees under paragraph 1. and legal fees under paragraphs 4. and 5. with any vendor on **our** list of Panel Providers. |
| Employee | means any past, present, or future: |
| | 1. person employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary employee, intern, or any volunteer; |
| | 2. independent contractor; and |
| | 3. **senior executive**; |
| | but only while acting on behalf of the **named insured** or **subsidiary** and in the scope of the business operations of the **named insured** or **subsidiary**. |



| Insured, you, or your | Means:<br>1. the **named insured**;<br>2. a **subsidiary**;<br>3. **senior executives** and **employees**; and<br>4. with respect to Section II.A, NETWORK AND INFORMATION SECURITY LIABILITY and Section II.B, REGULATORY DEFENSE AND PENALTIES, any person or entity **you** have agreed in a written contract or agreement to add as an additional insured to a policy providing the type of coverage afforded by this Policy, provided such contract or agreement is in effect or becomes effective during the **policy period**, and solely for such person or entity's liability arising out of the **named insured's** or **subsidiary's** acts;<br>5. the estates, heirs, legal representatives, or assignees of any **employee** or **senior executive** in the event of their death, incapacity, insolvency, or bankruptcy but solely for the estates', heirs', legal representatives', or assignee's liability arising out of the acts committed by the **employee** or **senior executive**; and<br>6. the spouse, domestic partner, or civil partner of any **employee** or **senior executive** solely for such spouse's, domestic partner's, or civil partner's liability resulting from a **claim** against the **employee** or **senior executive**; or their ownership or interest in property which the claimant seeks as recovery for a **claim** against the **employee** or **senior executive**. |
| --- | --- |



| | |
|---|---|
| Restoration costs | means the reasonable and necessary costs **you** incur to replace, restore, or recreate **digital assets** to the level or condition at which they existed prior to a **security failure** or **systems failure**.  If such **digital assets** cannot be replaced, restored, or recreated, then **restoration costs** will be limited to the actual, reasonable, and necessary costs **you** incur to reach this determination. **Restoration costs** do not include:<br><br>1. any costs or expenses incurred to update, upgrade, replace, restore, repair, recall, or otherwise improve the **digital assets** to a level beyond that which existed prior to the **security failure** or **systems failure**;<br><br>2. any costs or expenses incurred to identify, remove, or remediate computer program errors or vulnerabilities, or costs to update, upgrade, replace, restore, maintain, or otherwise improve any **computer system**; or<br><br>3. the economic or market value of any **digital assets**, including trade secrets, or the costs to re-perform any work product contained within any **digital assets**.<br><br>**Restoration costs** does not mean and will not include costs for better computer systems or services than **you** had before the **security failure** or **systems failure**, including upgrades, enhancements, and improvements.  However, this shall not apply if the cost for the most current version of a computer system is substantially equivalent to (or less than) the original cost of the computer system **you** had before the **security failure** or **systems failure** took place. |
| Senior executive | means any in-house counsel, risk manager, chief information officer, chief information security officer, chief privacy officer, chief financial officer, chief executive officer, chief operating officer, or functional equivalent, but only while acting on **your** behalf in the scope of **your** business operations. |



| Subsidiary | means any organization in which the **named insured**:<br><br>1. owns either directly or indirectly 50% or more of the outstanding voting stock; or<br><br>2. has recognized the revenues in the **application**.<br><br>An organization ceases to be a **subsidiary** on the date, during the **policy period**, that the **named insured's** ownership, either directly or indirectly, ceases to be 50% of the outstanding voting stock.<br><br>The **named insured** will give written notice to **us** of any acquisition or creation of an organization with ownership interest greater than 50%, no later than ninety (90) days after the effective date of such acquisition or creation.  Automatic coverage of such organization is granted until the end of the **policy period** or for 90 days, whichever is the earlier, subject to the following criteria<br><br>1. the newly created or acquired **subsidiary** has substantially similar business operations;<br><br>2. the new **subsidiary's** gross revenue is equal to or less than 23% of the total gross revenue the **named insured** has listed on the **application**, such amount not to exceed $45 million; and<br><br>3. prior to the effective date of such acquisition or creation, no **senior executive** of the **named insured** or of the acquired or created organization, knew or could have reasonably expected that a **claim** would be made or coverage triggered under any Insuring Agreement in Section II, WHAT WE COVER.<br><br>Upon receipt of notice of such acquisition or creation, **we** may, at **our** sole option, agree to appropriately endorse this Policy subject to additional premium and/or change terms and conditions.  If the **named insured** does not agree to the additional premium and/or changed terms and conditions, if any, coverage otherwise afforded under this provision for such acquired or created organization will terminate ninety (90) days after the effective date of such acquisition or creation, or at the end of the **policy period**, whichever is the earlier. |

11. Section IX, DEFINITIONS is amended by the addition of the following definition:

| Criminal reward costs | means any amount offered and paid by **us** for information that leads to the arrest and conviction of any individual(s) committing or trying to commit any illegal act related to any coverage under this Policy. **Criminal reward costs** does not include and this Policy will not cover any amount offered and paid for information provided by **you**, **your** auditors, whether internal or external, any individual hired or retained to investigate the aforementioned illegal acts, or any other individuals with responsibilities for the supervision or management of the aforementioned individuals. |



12. SECTION X, OTHER PROVISIONS is amended with the following:

| TERRITORY | This Policy will apply to **claims** made and **losses** incurred anywhere in the world. |
| --- | --- |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition®

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**          **13**

### REGULATORY COVERAGE ENHANCEMENT ENDORSEMENT – CCPA AND GDPR

| | |
|---|---|
| Form Number | SP 17 147 1119 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. SECTION II, WHAT WE COVER – OUR INSURING AGREEMENTS, THIRD PARTY LIABILITY COVERAGES, paragraph B is deleted and replaced with the following:

| **B. REGULATORY DEFENSE AND PENALTIES** | **We** will pay on **your** behalf **claim expenses** and **regulatory penalties** that **you** become legally obligated to pay resulting from a **claim** against **you** in the form of a **regulatory proceeding**. |
|---|---|

2. The definition of "**Regulatory proceeding**" under SECTION IX, DEFINITIONS is deleted and replaced with the following:

| Regulatory proceeding | means a request for information, civil investigative demand, or civil proceeding commenced by service of a complaint or similar proceeding: |
|---|---|
| | 1. brought by or on behalf of the Federal Trade Commission, Federal Communications Commission, Securities and Exchange Commission (SEC) arising only from S-P (17 C.F.R. § 248), or any federal, state, local, or foreign governmental entity in such entity's regulatory or official capacity, in connection with such proceeding arising from a **security failure** or a **data breach**; or |
| | 2. brought for a violation of the General Data Protection Regulation (GDPR), California Consumer Privacy Act (CCPA), or any similar federal, state, local, or foreign regulation arising from a **privacy liability**. |
| | Other than the foregoing, **regulatory proceeding** does not include a request for information, civil investigative demand, or civil proceeding commenced by service of a complaint or similar proceeding brought by the Securities and Exchange Commission (SEC) and similar federal, state, local, or foreign governmental entities. |



All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition®

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**           **14**

### CRIMINAL REWARD COVERAGE ENDORSEMENT

| | |
|---|---|
| Form Number | SP 16 670 0818 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

#### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

#### This endorsement modifies insurance provided under the following:

#### COALITION CYBER POLICY

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5. FIRST PARTY COVERAGES of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sublimit | Retention |
|---|---|---|
| CR. CRIMINAL REWARD COVERAGE | $25,000 | $0 |

2. Section II, FIRST PARTY COVERAGES is amended by the addition of the following Insuring Agreement:

| | |
|---|---|
| **CR. CRIMINAL REWARD COVERAGE** | **We** will indemnify the **named insured criminal reward costs**.  No Retention will apply to this insuring agreement. |

3. Section IX, DEFINITIONS is amended by the addition of the following definition:

| | |
|---|---|
| Criminal reward costs | means any amount offered and paid by **us** for information that leads to the arrest and conviction of any individual(s) committing or trying to commit any illegal act related to any coverage under this Policy. **Criminal reward costs** does not include and this Policy will not cover any amount offered and paid for information provided by **you**, **your** auditors, whether internal or external, any individual hired or retained to investigate the aforementioned illegal acts, or any other individuals with responsibilities for the supervision or management of the aforementioned individuals. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition˙

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**   **15**

## COURT ATTENDANCE COST REIMBURSEMENT ENDORSEMENT

| | |
|---|---|
| Form Number | SP 16 777 0918 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

SECTION V, CLAIMS PROCESS, DEFENSE is amended to include the following:

| DEFENSE | If **we** request **your** presence at a trial, hearing, deposition, mediation, or arbitration relating to the defense of any **claim**, **we** will pay reasonable costs and expenses of attendance up to a maximum amount of $250.00 a day per person, subject to a maximum amount of $25,000 per **policy period**. Such amounts are part of and not in addition to the Limits of Liability of this Policy. |
|---|---|

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**           **16**

<u>**MULTI-FACTOR AUTHENTICATION (MFA) RETENTION REDUCTION**</u>

| | |
|---|---|
| Form Number | SP 17 814 0819 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by (Name of Insurance Company) | North American Capacity Insurance Company, Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

1.  Section VI, LIMITS AND RETENTION, RETENTION is deleted and replaced with the following:

| Retention | **We** will only be liable for those amounts payable under this Policy which are in excess of the applicable Retention(s).  Such Retention(s) must be paid by **you** and cannot be insured. |
|---|---|
| | In the event that **damages, PCI fines and assessments, regulatory penalties, claim expenses, breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs,** or other amounts arising out of a **claim** or **incident** are subject to more than one Retention, the applicable Retention amount will apply to such **damages, PCI fines and assessments, regulatory penalties, claim expenses, breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs,** or other amounts, provided that the sum of such Retention amounts will not exceed the largest applicable Retention amount. |
| | In the event that **damages, PCI fines and assessments, regulatory penalties, claim expenses, breach response costs, business interruption loss, crisis management costs, cyber extortion expenses, extra expenses, funds transfer loss, restoration costs,** or other amounts arise out of a **claim** or **incident** that is the direct of a **business email compromise,** the largest applicable Retention amount will be reduced by 50% subject to a maximum reduction of $10,000, provided that **multi-factor authentication** was enabled and required at the time of the applicable **incident**. |

 Coalition˚

2. Section IX, DEFINITIONS is amended by the addition of the following definitions:

| Business email compromise | means any access to or use of **your** email system in a manner that is not authorized by **you**. |
|---|---|
| Multi-factor authentication | means, in addition to the use of a user ID and password to validate access to **your** email system, the use of at least one of the following methods of authentication:<br><br>a. a hardware or software token or access card;<br><br>b. third party authentication applications providing time bound, one-time codes, by a method other than text messaging; or<br><br>c. **text messaging authentication**. |
| Text messaging authentication | The use or receipt of a unique one-time passcode received by text message to a pre-established mobile number linked to the email account on **your** email system that is being accessed in order to validate access to **your** email system. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition°

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**   **17**

### DUTY TO COOPERATE ENDORSEMENT

| | |
|---|---|
| Form Number | SP 17 274 0219 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

SECTION IV, YOUR OBLIGATIONS AS AN INSURED, DUTY TO COOPERATE is deleted and replaced with the following:

| | |
|---|---|
| DUTY TO COOPERATE | **We** will have the right to make any investigation **we** deem necessary to adjust any claim, and **you** will cooperate with **us** in all investigations, respond to reasonable requests for information, and execute all papers and render all assistance as requested by **us**. **You** will also cooperate with counsel in the defense of all **claims** and response to all **incidents** and provide all information necessary for appropriate and effective representation. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition

**MASTER POLICY NO.:**  C-4M0A-226772-CYBER-2020
**ENDT. NO.:**   18

## YOUR OBLIGATIONS AS AN INSURED ENDORSEMENT

| | |
|---|---|
| Form Number | SP 17 275 0219 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

SECTION IV, YOUR OBLIGATIONS AS AN INSURED, WHEN THERE IS A CLAIM OR INCIDENT is deleted and replaced with the following:

| | |
|---|---|
| WHEN THERE IS A **CLAIM** OR **INCIDENT** | You must provide **us** written notice of a **claim** or **incident** through the persons named in Item 8. of the Declarations as soon as practicable once such **claim** or **incident** is known to a **senior executive**. In no event will such notice to **us** be later than: (i) the end of the **policy period**; (ii) or 90 days after the end of the **policy period** for **claims** made against you or **incidents** discovered by **you** in the last 60 days of the **policy period**. |

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.

 Coalition˙

**MASTER POLICY NO.:**   **C-4M0A-226772-CYBER-2020**
**ENDT. NO.:**            **19**

## ENHANCED WAITING PERIOD FOR DENIAL OF SERVICE

| | |
|---|---|
| Form Number | SP 14 805 1117 |
| Effective Date of Endorsement | October 01, 2020 |
| Named Insured | The Landings Yacht Golf & Tennis Club, Inc. |
| Master Policy Number | C-4M0A-226772-CYBER-2020 |
| Issued by | North American Capacity Insurance Company, |
| (Name of Insurance Company) | Peleus Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**This endorsement modifies insurance provided under the following:**

**COALITION CYBER POLICY**

In consideration of the premium charged for this Policy, it is hereby understood and agreed that:

1. Item 5.H. of the Declarations is amended to include the following:

| Insuring Agreement | Limit/Sub-Limit | Retention/Sub-Retention |
|---|---|---|
| H. BUSINESS INTERRUPTION AND EXTRA EXPENSES | $2,000,000 | $5,000 |
| | | i. Waiting period: 8 hours |
| | | ii. Enhanced waiting period: 1 hour |

2. The second paragraph of Section II.H, BUSINESS INTERRUPTION AND EXTRA EXPENSES, is deleted and replaced with the following:

The **waiting period** for any failure of **computer systems** caused by a **denial of service attack** and where **you** are utilizing a DDoS mitigation provider from our list of Panel Providers at the time of such **denial of service attack**, will be the period of time set forth in Item 5.H.ii. of the Declarations. The **waiting period** for all other causes of failure of **computer systems** or where the failure of **computer systems** is caused by a **denial of service attack** and **you** are not utilizing a DDoS mitigation provider from our list of Panel providers at the time of such **denial of service attack**, will be the period of time set forth in Item 5.H.i. of the Declarations.

All other terms and conditions of this Policy remain unchanged.

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.